IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:15-CR-533-L** |
| | § | |
| **JAYSON HOWARD MOORE** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Judgment of Acquittal ("Motion for Acquittal") or, in the Alternative, Motion for New Trial ("Motion for New Trial") (collectively, "Motions") (Doc. 284), which was docketed on August 24, 2018, and the supplements to the Motions (collectively, "Supplements") (Docs. 285, 305, 328),[*] which were docketed on August 24, 2018; December 18, 2018; and February 28, 2019. After considering Defendant's Motions, Supplements, the Government's response, the record, and applicable law, the court **denies** Defendant's Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial, as well as the related relief requested by him in the Supplements to his Motions (Docs. 284, 285, 305, 328).

### I. Factual and Procedural Background

On November 18, 2015, a one-count Indictment charged Defendant Jayson Howard Moore ("Defendant" or "Moore") with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)[2] to which Moore pleaded not guilty. Count One of the Superseding Indictment filed on May 30, 2018, charged Moore with the same criminal offense, to which Moore

---

[*] The court's references herein to and ruling on Defendant's Motions will necessarily include the related Supplements filed in support of the Motions.

[2] Section 924(a)(2) sets forth the penalties for violations of section 922(g) and provides that "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

**Memorandum Opinion and Order – Page 1**

again pleaded not guilty. A jury trial was conducted from August 2, 2018, to August 7, 2018.[3] At the close of the Government's case on August 3, 2018, Moore made an oral motion in open court for a judgment of acquittal. Tr. Vol. 2A at 106-112. In denying the motion, the court explained that Moore's contentions pertained to credibility, which was for the jury to decide, not the court. On August 7, 2018, after a five-day trial, a jury found Moore guilty of the felon-in-possession offense charged in Count One of the Superseding Indictment.

In his Motions that are the subject of this opinion, Moore seeks a judgment of acquittal or new trial under Federal Rules of Criminal Procedure 29(c) and 33. As noted, he filed three Supplements in support of the Motions, which were docketed on August 24, 2018; December 18, 2018; and February 28, 2019. On December 18, 2019, Moore also filed a motion to Recuse (Doc. 304) but subsequently withdrew the motion on February 7, 2019. On May 2, 2019, after the transcripts of the trial and pretrial conference were filed by the court reporter, the Government moved for leave to file its combined response to Defendant's Motions. The court granted the unopposed motion on May 29, 2019, and directed the clerk of the court to docket the Government's combined response, which was docketed the next day.

## II. Motion for Judgment of Acquittal

Moore moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal, contending that, even viewing the evidence and all reasonable inferences in the light most favorable to the Government, there is insufficient evidence to support the jury's guilty verdict on the felon-in-possession charge.

---

[3] A pretrial conference and jury selection took place on August 1, 2018, before the evidentiary portion of the trial commenced on August 2, 2018.

**Memorandum Opinion and Order – Page 2**

### A. Legal Standard

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 challenges "the sufficiency of the evidence to sustain a conviction." *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007). "When the defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Miles*, 360 F.3d 472, 476 (5th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319(1979)). The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (citations omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005). "All reasonable inferences [that] tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor." *United States v. Burns*, 597 F.2d 939, 940-41 (5th Cir. 1979) (citations omitted).

To establish a violation of Title 18, United States Code, sections 922(g)(1), the Government must prove three elements beyond a reasonable doubt: "(1) that the defendant previously had been convicted of a felony; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012) (citations omitted). Willfulness is not an element of this offense. *See* 18 U.S.C. § 924(a)(2). The Government need only prove that the defendant knew he possessed a firearm or ammunition, not that he had knowledge of his status as a qualifying felon or that the firearm traveled in or affected

interstate commerce. *United States v. Potts*, 644 F.3d 233, 237 (5th Cir. 2011) (citing *United States v. Rose*, 587 F.3d 695, 706 & n.9 (5th Cir. 2009)). For purposes of § 922(g)(1), the term "firearm" means: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silences; or (D) any destructive device." *United States v. Castillo-Rivera*, 853 F.3d 218, 225 (5th Cir. 2017) (quoting 18 U.S.C. § 921(a)(3)). "[O]nly a 'minimal nexus' between the firearm and interstate commerce" is required to satisfy the statute's interstate nexus requirement. *United States v. Gresham*, 118 F.3d 258, 264 (5th Cir. 1997) (citation and footnote omitted). The interstate commerce element of a charge under section 922(g)(1) is satisfied when the Government demonstrates that the firearm was manufactured out of state. *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005).

### B. Grounds for Acquittal

#### 1. Evidence Firearm(s) Traveled in or Affected Interstate Commerce

Moore's Motion for Acquittal focuses on the third element of the charged offense, whether a firearm or firearms traveled in or affected interstate commerce. With respect to this element, Moore contends that the Government's evidence was insufficient because: (1) there was no "reliable evidence at trial presented to prove that the alleged firearms actually affected interstate commerce"; (2) "no reasonable jury could have concluded that interstate commerce was affected based on [Special] Agent [Scott] Satcher's contradicting testimony alone"; and (3) Agent Satcher's testimony was unreliable because he was not involved in the case until April 2018, did not know certain facts about the investigation of the firearms, admitted to writing his report before examining the firearms in question despite testifying that he normally examines firearms before writing his report, and no

certifications or licenses were provided by him to show he was qualified to provide an interstate commerce opinion. Def.'s Mot. for Acquittal 2-3. Moore also contends that the Government "failed to produce any tracing reports, ballistic reports, or pictures of firearms that indicate the firearms had ever been examined or were firearms at all." *Id.* at 2.

In the Third Supplement to his Motion for Acquittal, Moore further asserts that the Government's evidence was insufficient to prove that interstate commerce was affected because Agent Satcher's expert testimony was deficient and unreliable for the following reasons: (1) Agent Satcher was not involved in the original investigation of the charged offense; and (2) his report and testimony did not satisfy Federal Rule of Civil Procedure 26(A)(2)(B); Federal Rule of Evidence 702; and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Moore contends that Agent Satcher's testimony that the firearms affected interstate commerce cannot be the product of reliable principles and methods if he never actually examined the firearms.

The Government responds that, while Defendant's Motion for Acquittal focuses on whether it proved that any of the firearms "affected" interstate commerce, it was only required to prove either that a firearm traveled in *or* affected interstate commerce, not both. The Government also contends that the credibility of Agent Satcher's testimony is not an appropriate ground for acquittal because the jury is the final arbiter of witness credibility, not the court, and the law does not permit courts to make credibility determinations contrary to the jury's verdict when reviewing the sufficiency of the evidence. The Government maintains that, because the court correctly instructed the jury on how to assess the credibility of witnesses in this case, the jury is presumed to have followed that instruction. The Government further asserts that Moore did not previously object to Agent Satcher's testimony on the grounds that it did not comply with Federal Rule of Civil Procedure 26(A)(2)(B),

Federal Rule of Evidence 702, or *Daubert*, and he did not request the court to conduct a *Daubert* hearing. The Government, therefore, argues that Moore waived this objection, and review of any such alleged error or errors is limited to review for plain error. The Government contends that Moore cannot establish plain error because Federal Rule of Criminal Procedure 16(a)(1)(F) and (G) apply to expert disclosures and discovery in criminal cases, not Federal Rule of Civil Procedure 26, and Agent Satcher's testimony met or exceeded Rule 702's and *Daubert*'s requirements for expert testimony.

Regardless of whether this issue was previously raised, it is an insufficient basis to justify a judgment of acquittal. As the court explained in its instructions to the jury and in ruling on Defendant's oral motion for judgment of acquittal, jurors are the sole judges of witness credibility and believability and the weight to be given to witness testimony. Court's Instructions to the Jury 5-6 (Doc. 281); Tr. Vol. 2A at 109-10. Jurors are presumed to follow instructions provided by a district court. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). As "the jury is the arbiter of [the] credibility of witnesses," the "trial judge cannot arrogate to himself this power" and overturn a jury verdict "simply because he finds a witness unbelievable." *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976).

Moreover, expert disclosures and discovery of reports of examinations and tests in criminal proceedings are governed by Federal Rule of Criminal Procedure 16(a)(1)(F) and (G), not Rule 26 of the Federal Rules of Civil Procedure, which applies only in civil actions. Defendant is correct that, to be admissible, Agent Satcher's testimony is subject to the requirements of Rule 702 and *Daubert*

for expert testimony.[4] The court, however, disagrees that Agent Satcher's testimony did not satisfy Rule 702's and *Daubert*'s requirements for expert testimony.[5] The matters raised by Defendant go only to the weight of his testimony, not admissibility. Tr. Vol. 2A at 16-43.

Viewing Agent Satcher's testimony and the Government's other evidence in the light most favorable to the Government, the court determines that a reasonable jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion that the Government proved beyond a reasonable doubt that one or all of the firearms at issue traveled in *or* affected interstate commerce, as Agent Satcher testified that the firearms in question satisfied the definition

---

[4] Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts are assigned a gatekeeping role to determine the admissibility of expert testimony. *Daubert*, 509 U.S. at 592-98. The court must find that the evidence is both relevant and reliable before it may be admitted. *Id*.

[5] Even though the court did not orally make an express finding during the trial, it was convinced that Agent Satcher was qualified to testify as an expert witness under Rule 702, given his training, experience, and specialized expertise regarding interstate commerce and the manufacture of firearms. The court also necessarily determined that Agent Satcher's testimony, that the firearms in this case were manufactured outside of Texas, was: (1) relevant to whether they traveled in or affected interstate commerce; and (2) reliable in light of his testimony regarding the methodology normally used in the field in firearm investigations and his adherence to that methodology in this case. The court generally needs to interject quite often when an expert is being proved-up; however, because of the thoroughness of the Government's examination of Agent Satcher, it only interjected briefly twice to ask questions of the witness. In other words, the court exercised its gatekeeping role regarding Rule 702 testimony. The court also notes that Agent Satcher maintained his composure remarkably well during cross-examination by Defendant Moore, who asked a number of irrelevant, argumentative, and improper legal questions. Although the court sustained a number of Government objections and instructed the jury to disregard certain lines of inquiry by Defendant, it allowed him more leeway than it normally would have given a licensed attorney because he was representing himself.

of a firearm for purposes of section 922(g) and were manufactured outside of the state of Texas. Accordingly, Moore is not entitled to a judgment of acquittal on this ground.

### 2. Evidence of Prior Felony Conviction

In the first and second Supplements to his Motion for Acquittal, Moore focuses on the admissibility of the evidence relied on by the Government at trial to prove that he has a prior felony conviction. "Title 18, section 922(g)(1) prohibits a person 'convicted . . . of a crime punishable by imprisonment for a period exceeding one year' from possessing a firearm. Whether prior criminal proceedings resulted in a 'conviction' depends on the law of the jurisdiction that conducted them." *United States v. Dancy*, 861 F.2d 77, 79 (5th Cir. 1988) (quoting 18 U.S.C. § 921(a)(20)). Section 921(a)(20) excludes state misdemeanors that carry a term of imprisonment of two or less years and convictions that have been "expunged, or set aside or for which a person has been pardoned or has had civil rights restored." *Id.*

In the first Supplement to his Motion for Acquittal, Moore argues that the Government failed to prove that he had been previously convicted of a felony, and the court erred in allowing the Government to introduce evidence [Government Exhibit 16] as proof of his criminal history because: (1) the Government did not produce a "certified judgment from any court showing [he] had been convicted of a crime punishable by imprisonment for a term in excess of one year" and "[i]nstead . . . produced an affidavit from an unavailable witness named 'Travis Turner,' (see Government's Exhibit 16) who stated therein that he was a chairman of classification and records for the Texas Department of Justice"; (2) the copy of the uncertified judgment and corresponding fingerprint card attached to Turner's affidavit referenced the incorrect more serious offense of "aggravated robbery" rather than robbery; (3) the copy of the uncertified judgment was not self-authenticating under

Federal Rule of Evidence 902 because "there is no seal of any state on the document," "the judgment itself has no certified stamp from any clerk of a state court," and the "document . . . did not come from the court where items of its kind are kept pursuant to [Federal Rule of Evidence] 901"; and (4) "the top of the document appear[s] to be faded and distorted with missing letters and numbers." Def.'s First Supp. 1-2. Moore further asserts that Dallas County Deputy Sheriff Detective Garrick Whaley ("Detective Whaley") should not have been allowed to testify that the fingerprints in Government Exhibit 16 and the fingerprints he took of Moore during the trial both belonged to the same person, that is, Moore because: (1) Detective Whaley did not prepare the records in Government Exhibit 16 and does not work for the Texas Department of Corrections; and (2) Turner's affidavit and the attached court records are unreliable because Turner was an "unavailable witness," and the court records "are not a certified judgment from any court that rendered a judgment against [him]." *Id.* at 1. Moore maintains that a "business record from an agency outside of the court [that created the record] is not proof of a conviction," and the court stated as much during the trial in this case but, nevertheless, allowed the uncertified record [Government's Exhibit 16] to be introduced as an exhibit.

In the Second Supplement to his Motion for Acquittal, Moore takes issue with Turner's affidavit, evidence of the 2002 judgment and related fingerprint card in Case No. F-02397565, and whether the offense in that case qualified as a felony for purposes of section 922(g). Specifically, Moore contends that: (1) Turner's affidavit is technically deficient because it is not notarized as required by 28 U.S.C. § 1746; (2) Turner states that the records attached to his affidavit are "'true and correct' copies of Moore's 'records' in his office," but he does not state that the records attached to his affidavit are "'true and correct' copies of the original documents" as required by *United States*

*v. Stone*, 604 F.2d 922, 925 (5th Cir. 1979); (3) the 2002 judgment and attached fingerprints do not satisfy Federal Rule of Evidence 902(4)'s requirement that "a public document be a true and correct copy of the original document," as these documents are "altered" in that "the top of the documents are blank, distorted, and completely missing numbers and portions of the document[s] after being poorly copied"; and (4) the 2002 judgment is not a "final judgment" and, thus, "invalid," as paragraph 40 of the Presentence Investigation Report prepared by the probation officer in this case indicates that he was sentenced in Case No. F-02397565 to five years probation on June 11, 2003, and was not required to serve the ten-year sentence imposed in the 2002 judgment "as falsely indicated to the jury." Def.'s Second Supp. 1-2. For all of these reasons, Defendant contends that there was insufficient evidence to show he had been previously convicted of a crime punishable by a term of imprisonment of more than one year.

The court did not receive Defendant's Second Supplement to his Motion for Acquittal until December 18, 2018.[6] Rule 29 provides that a defendant may move for a judgment of acquittal, or renew such a motion, but must do so within 14 days after a guilty verdict or after the court releases the jury, whichever is later. As Defendant did not file his Second Supplement until approximately four months after the jury returned a guilty verdict on the felon-in-possession charge, it was not filed timely. Defendant also did not request and was not granted leave to file the Second Supplement. Additionally, the Government correctly notes that many of the arguments now urged in Defendant's Motion for Acquittal and related Supplements were not raised during the trial or the bases for the objections asserted at trial are not the same as those now asserted. Even if not waived, the court

---

[6] Defendant indicates in his Second Supplement that it was submitted December 11, 2018, the same date he certifies that a copy was served on the Government "through the United States Postal Service," but he does not say when he deposited the document in the prison mail system for filing.

determines that Defendant's contentions regarding the adequacy of the evidence offered by the Government and admitted by the court with respect to Defendant's prior felony conviction are without merit for many of the reasons set forth in the Government's response and thorough analysis of the legal and evidentiary issues raised by Defendant.

For purposes of brevity, the court will not elaborate on the law, evidence, and portions of the trial detailed in the Government's response. Further, the court relies on the rationale and explanation expressed by it during the trial while ruling on motions and objections made by Defendant Moore. It will, however, address one argument not directly addressed in the Government's response. As noted, Defendant contends that the court stated during the trial that a "business record from an agency outside of the court [that created the record] is not proof of a conviction," but, nevertheless, admitted Government's Exhibit 16, which Defendant asserts was not properly certified by any court. This contention, like many of the arguments made by Defendant now and during the trial, is based on a misunderstanding of the law and does not accurately reflect the court's ruling or what transpired during the trial. While the court indicated that parties that have appeared before it in the past have generally sought to admit certified copies of judgments obtained from the issuing court, it ultimately determined, after hearing argument from both the Government and defense, that the records offered by the Government in Moore's Texas penitentiary packet or "pen packet" were properly certified and authenticated.[7] It also explained to Defendant that this obviated the need for live testimony by

---

[7] One of the key cases relied on by the Government at trial and in response to Defendant's Motions is *United States v. Dancy*, 861 F.2d 77 (5th Cir. 1988). *See* Tr. Vol. 2A at 83 (Doc. 333). In reviewing the trial transcript, the court noticed that one reference to this case is misspelled as "ANSI." *Id.* at 90.

Turner to authenticate the records in his pen packet, which included the 2002 judgment for his prior felony conviction.[8] The court, therefore, overruled this objection by Moore.

Accordingly, after considering Defendant's Motion for Acquittal, Defendant's related Supplements, the Government's response, applicable law, the record, and the court's own recollection of the evidence at trial, the transcript of the proceedings in this case, and viewing the evidence in the light most favorable to the Government, the court **concludes** that there was sufficient evidence from which the jury could have found beyond a reasonable doubt the essential elements of the offense in the Superseding Indictment that are the subject of Defendant's request for a judgment of acquittal.

### III. Alternative Motion for New Trial

Rule 33(a) of the Federal Rules of Criminal Procedure allows the court, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." "[M]otions for new trial are not favored, and are granted only with great caution." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citation omitted). Consequently, "[t]he remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *Id.* (citation and internal quotation marks omitted); *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (explaining that a motion for a

---

[8] To the extent Defendant argues that Detective Whaley's testimony does not satisfy *Daubert* or Rule 702, the court, for reasons similar to those expressed with respect to Agent Satcher, determined during the trial, without making an express ruling orally, that Detective Whaley was also qualified based on his training, experience, and specialized expertise to provide an opinion regarding the fingerprints in the pen packet and those of Defendant taken during the trial. The court also ensured that his testimony was reliable by asking a number of questions of him regarding his methodology in addition to those asked by the Government. Finally, Detective Whaley's testimony that the different sets of fingerprints both belonged to Defendant was relevant, as Defendant did not stipulate to having a prior felony conviction and required the Government to prove that he was the same person who sustained a felony conviction in 2002 for robbery as reflected in the 2002 judgment and pen packet.

new trial should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict. A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant."). In expounding on this standard and to assist district courts in deciding whether to grant a Rule 33 motion, the Fifth Circuit has stated as follows:

> In determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function, or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate.
>
> Setting aside a jury's guilty verdict in the interests of justice may be appropriate under circumstances [when] the evidence brought forth at trial may tangentially support the verdict, but in actuality, preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred. Similarly, while vested with discretion to grant a new trial pursuant to Rule 33 if necessary in accordance with the interests of justice, we have observed that this power should be exercised infrequently by district courts, unless warranted by exceptional circumstances.

*United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (internal quotation marks and citations omitted).

In his alternative Motion for New Trial, Moore contends that he is entitled to a new trial on the following grounds: (1) unfair surprise as a result of the admission of hearsay evidence in the form of a firearms record obtained from Lone Star Pawn; (2) self-compelled incrimination in violation of his Fifth Amendment as a result of being fingerprinted; (3) admission of hearsay evidence in the form of carbon copy receipts, witness testimony, and a "Leads-Online" report to establish he possessed the firearms in question; (4) imposition by the court of an unfair time limit in examining witnesses; (5) violation of his right to a defense as a result of his not being allowed to introduce during trial evidence or reargue grounds raised in his suppression motion that was previously denied

by the court; (6) alleged prosecutorial misconduct by the Government in the form of witness tampering, use of his driver's license and text messages from his cellular telephone as evidence, and failing to arraign him on the Superseding Indictment.

The Government contends that Moore waived most of the arguments asserted in his Motion for New Trial by failing to object at trial or by creating the error. The Government, therefore, argues that a plain error standard of review applies to Defendant's first, second, third, and fourth grounds for new trial. The Government maintains that Moore also waived his fifth and sixth grounds for new trial, to the extent he did not object at trial to the admission of the pawn shop receipts or Charles Reyna's testimony. The Government maintains that, under a plain error standard of review, these arguments do not entitle Moore to a new trial. The Government contends that Moore's other grounds for a new trial, to the extent not waived, fare no better.

The court has carefully reviewed Defendant's Motion for New Trial and the Government's response. Moore's grounds for a new trial are similar to some of the objections previously asserted by him during the trial in that they pertain to the same subject matter or evidence, but his reasons for contesting these issues or evidence now differ from those previously asserted by him. Even assuming that Moore asserted timely objections during the trial regarding the matters in his Motion for New Trial, the court concludes, for many of the reasons enunciated in the Government's response, that these matters do not constitute exceptional circumstances that warrant setting aside the jury's verdict or granting his request for a new trial.

Regarding Moore's fourth ground, the court imposed time limits during the trial and kept track of the approximate time used by both parties to move the trial along and avoid unnecessary delay. By the court's calculation, the Government, which had the burden of proof, took

approximately 279 minutes to put on its case. This includes time it spent to cross-examine witnesses called by the defense. Moore, on other hand, spent approximately 404 minutes, which is far more time than that taken by the Government. This time included a number of breaks during the trial that were taken to allow Moore to locate and organize his misplaced notes and exhibits, bench conferences regarding his readiness, and considerable time for witness examination by him during which he repeatedly asked witnesses the same questions or similar questions regarding the same topics that had been previously asked and answered a number of times. Further, as the Government notes and Moore concedes, he did not use all of the time allotted to him by the court. In sum, Moore's contentions regarding this and other matters are simply not supported by the record, applicable law, or both, and are based primarily on speculation and unsupported conjecture.

Moreover, some of the alleged errors of which Moore now complains were those of his own making in representing himself at trial and, thus, do not justify a new trial. The court cautioned Moore about the potential danger of conducting his own defense, but he, nevertheless, insisted on proceeding pro se. As a result, he cannot complain now of perceived errors and contend that he was prejudiced by such matters attributable to the quality of his own pro se defense, for example, the court's decision to grant his request during the trial to admit the "Leads-Online" report that he now contends is inadmissable hearsay. *See United States v. Brown*, 591 F.2d 307, 311-12 (5th Cir. 1978) ("Brown represented himself by his own choice. He cannot complain now [about] the quality of his [p]ro se defense."). This and the other grounds raised by Moore are, therefore, insufficient to warrant a new trial under Rule 33. Accordingly, after considering Defendant's request for a new trial, the Government's response, the foregoing legal standard, the evidence, and the jury's verdict, the court **concludes** that Moore is not entitled to a new trial.

## IV. Conclusion

For the reasons explained, the court **denies** Defendant's Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial, as well as the related relief requested by him in the Supplements to his Motions (Docs. 284, 285, 305, 328). By separate document, the court will enter a sentencing scheduling order that resets and expedites the sentencing hearing in this case that was previously set for January 14, 2019. As indicated in its May 29, 2019 order, the court will not entertain any further continuances to any sentencing hearing date that is set by the court, as all prior deadlines for disclosure of the Presentence Sentence Report ("PSR"), disclosure of Addendums to the PSR, and filing objections to the PSR and Addendums have expired. Thus, the only sentencing materials that the court will allow the parties to file will be: (1) sentencing memorandums or motions for sentencing departures or variance; (2) requests for the court to consider credit for time served; and (3) materials supporting such requests, all of which must be filed by the deadlines imposed. Deadlines for the submission of these sentencing materials will also be included in a later order entered by the court.

**It is so ordered** this 19th day of June, 2019.

_____
Sam A. Lindsay
United States District Judge