IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:15-CR-533-L** |
| | § | |
| **JAYSON HOWARD MOORE** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion Requesting Judgment of Acquittal ("Motion for Acquittal") (Doc. 512), filed April 3, 2020; and the Government's Motion for Leave (Doc. 518), filed April 30, 2020. After considering the motions, briefs, the record, and applicable law, the court **grants** the Government's Motion for Leave (Doc. 518); and **denies** Defendant's Motion for Acquittal (Doc. 512).

## I.    Government's Motion for Leave

After Jayson Howard Moore ("Defendant" or "Moore") objected to the Government's response to his Motion for Acquittal as untimely, the Government sought leave for the court to consider its response, which it acknowledges was filed three days after the response deadline. The Government asserts that its response was untimely because it mistakenly calculated the response deadline from the date it received notice of Defendant's motion on April 6, 2020, rather than the actual file date of April 3, 2020. Defendant contends that the court should not consider the untimely response because, in connection with a previously-filed motion for acquittal, the court did not consider one of his untimely supplements that was filed without leave of court. Defendant argues that the court should treat the Government's response similarly because it is untimely and was filed without leave of court.

**Memorandum Opinion and Order – Page 1**

The court has given both parties wide latitude in this case and granted both sides a number of extensions. While Defendant is correct that his Motion for Acquittal was filed timely, he too was granted an extension to file his motion.   Further, though styled as Defendant's Objections to the Government's Untimely Response to Defendant's Motion for a Judgment of Acquittal (Doc. 517), this filing is not limited to the timeliness of the Government's response and, instead, addresses the merits of the Government's response to the Motion for Acquittal.  Thus, the portion of Defendant's objections that responds to the Government's arguments is an improper reply, which was also filed without leave of court in violation of the district's Local Criminal Rules.  Rather than striking the Government's untimely response or Moore's improper reply, the court will grant both parties leave of court for these filings and considers both to avoid delaying the resolution of Defendant's Motion for Acquittal.

## II.     Defendant's Motion for Acquittal

On November 25, 2019, Moore was found guilty by a jury of Counts One and Two of the Fifth Superseding Indictment ("Indictment") (Doc. 403) that charged him with (1) Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One); and (2) Possession of a Firearm by a Person Subject to a Domestic Violence Protective Order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2) (Count Two).  This was Moore's second jury trial.  On July 18, 2019, Moore notified the court of his decision to proceed with a new trial in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  The court, therefore, vacated the August 7, 2018 guilty verdict rendered by the jury (Doc. 282) after the first trial with respect to Count One of the second Superseding Indictment (Doc. 197) charging Moore with Felon in Possession of a Firearm in violation of section 922(g)(1) and scheduled a new trial.

Memorandum Opinion and Order – Page 2

Moore now moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal, contending that: (1) the Indictment was defective because it did not comply with the Supreme Court's opinion in *Rehaif*; (2) the Government's evidence and agents' trial testimony was contradictory and impeached; (3) the Government's physical evidence was contradicted by witness testimony; (4) the Government failed to prove interstate nexus at trial because Agent Scott Satcher's expert testimony was unreliable, inadmissible, and contradictory or contradicted by material evidence; (5) based on the reasoning in *United States v. Munoz-Rom*, 989 F. 2d 757 (5th Cir. 1993), double jeopardy is implicated because the Indictment charges him with violating different subsections of section 922(g) based on the same criminal conduct; (6) the Government did not prove that he had a prior felony conviction; and (7) the Government failed to prove that there was an order protecting an "intimate partner."

### A.    Legal Standard

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 challenges "the sufficiency of the evidence to sustain a conviction." *United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007). "When the defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Miles*, 360 F.3d 472, 476 (5th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319(1979)).  The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (citations omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *United States v.*

*Lucio*, 428 F.3d 519, 522 (5th Cir. 2005). "All reasonable inferences [that] tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor." *United States v. Burns*, 597 F.2d 939, 940-41 (5th Cir. 1979) (citations omitted).

Title 18, United States Code, sections 922(g)(1) and (8) make it unlawful for any person who has been convicted of a felony or is subject to a domestic violence protective order to possess a firearm. To establish a violation of section 922(g)(1) before *Rehaif*, the Government was required to prove beyond a reasonable doubt: "(1) that the defendant previously had been convicted of a felony; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012) (citations omitted). "Prior to *Rehaif*, countless felons pleaded guilty under § 922(g)(1) without ever objecting that the Government should be required to prove they knew they were convicted felons." *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020). As a result of the Supreme Court's holding in *Rehaif* interpreting 18 U.S.C. §§ 922(g) and 924(a)(2), the Government, in addition to the foregoing elements, is also required to prove that "the defendant knew he was a felon (or some other person covered by § 922(g)." *Id.* at 186 (citing *Rehaif*, 139 S. Ct. at 2194). For purposes of this case, the Government was required to prove with respect to Count One that, at the time when Moore possessed the firearms as alleged in the Indictment, he knew he had been convicted of a crime punishable by imprisonment for a term in excess of one year.[1]  *See id.*

---

[1] With respect to Count One under sections 922(g)(1) and 924(a)(2), the court's Jury Charge, in accordance with *Rehaif,* instructed jurors that, to find Moore guilty of the offense in Count One, they had to be convinced that the Government proved each of the following beyond a reasonable doubt:

*First:*    That Defendant Moore knowingly possessed a firearm as charged in the Indictment;

To establish a violation of section 922(g)(8), the Government must prove beyond a reasonable doubt that the defendant knowingly possessed a firearm when he was subject to a qualifying domestic violence protective order[2] and that the firearm traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(8).  To trigger section 922(g)(8), the Government must prove that the protective order:

> (A) issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

---

> *Second:*  That before Defendant Moore possessed the firearm, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense;
>
> *Third:*  That Defendant Moore knew that he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year when he is alleged to have possessed the firearm; and
>
> *Fourth:*  That the firearm possessed traveled in or affected interstate or foreign commerce; that is, before Defendant Moore possessed the firearm, it had traveled at some time from one state to another state of the United States, or between any part of the United States and any other country.

Jury Charge 12.

---

[2]*Rehaif* involved only section 922(g)(1), and the Court in *Rehaif* "express[ed] no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue" in that case. *Rehaif*, 139 S. Ct. at 2200. The Government in this case, nevertheless, acknowledged that this element applies to Count Two such that it was required to prove Moore knew he was subject to a protective order at the time he possessed the firearms at issue. Gov't Proposed Jury Instructions 22 & n.8 (Doc. 428).

§ 922(g)(8) (A)-(C).  "The term 'intimate partner' means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." 18 U.S.C. § 921(a)(32).  Cohabitate is not defined by the statute.  The court, therefore, instructed jurors that they could evaluate the various dimensions of the term "cohabitation" to arrive at the meaning based on their own experience. Jury Charge 15; *see also United States v. Ladouceur*, 578 F. App'x 430, 433 (5th Cir. 2014) (unpublished).

### B.    Discussion

#### 1.    Sufficiency Arguments

Despite Defendant's contention to the contrary, his sufficiency arguments are based on the credibility of witnesses, the evidence or weight to be given such testimony, or the evidence in light of what he refers to as contradictory testimony or evidence.  Jurors are the sole judges of witness credibility and believability and the weight to be given to witness testimony, and the jury in this case was instructed accordingly regarding their role in judging the credibility of witnesses and evidence.  Court's Instructions to the Jury 5-6 (Doc. 487); Tr. 109-10 (Vol. 2A).  Jurors are also presumed to follow instructions provided by a district court. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).  As "the jury is the arbiter of [the] credibility of witnesses," the "trial judge cannot arrogate to himself this power" and overturn a jury verdict "simply because he finds a witness unbelievable."  *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976); *see also United States v. Brown*, 553 F.3d 768, 780 (5th Cir. 2008).   Accordingly, he is not entitled to a judgment of acquittal on this ground, even though he does not use the word credibility in his Motion for Acquittal.  This is so regardless of whether his arguments are couched

as credibility issues, contradictions, or sufficiency of evidence grounds, as the court determines, after considering the parties' briefs, the record, and its own recollection of the evidence at trial, the transcript of the proceedings in this case, and viewing the evidence in the light most favorable to the Government, that there was sufficient evidence from which the jury could have found beyond a reasonable doubt each of the essential elements of the two offenses in the Indictment that are the subject of Defendant's Motion for Acquittal.[3]

### 2.    Agent Satcher's Interstate Nexus Testimony

Defendant's argument regarding Agent Satcher fares no better. As before, Defendant argues that Agent Satcher was not qualified to testify as an expert regarding the interstate nexus element because his testimony was deficient and unreliable. *See* June 19, 2019 Mem. Opin. & Order 5-8 (Doc. 342). In addition, Defendant contends that the court failed to perform its "gatekeeping" role with respect to Agent Satcher by not conducting a *Daubert* hearing and ruling on his motion before allowing Agent Satcher to testify during the second trial. As a result, Defendant contends that the jury was inadvertently allowed to hear Agent Satcher's inadmissible testimony.

Defendant is correct that, to be admissible, Agent Satcher's testimony is subject to the requirements of Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals,*

---

[3] This determination by the court covers a number of the sufficiency-type arguments asserted in Defendant's current motion, even though not specifically addressed in this opinion. Many of these arguments are similar to those previously asserted by Moore after the first trial and, as before, they are without merit because most of the arguments focus on the credibility of or weight to be given to witness testimony and evidence, and Moore's disagreement with the jury's findings based on the evidence presented at trial, or his misconceptions regarding the law.

**Memorandum Opinion and Order – Page 7**

*Inc.*, 509 U.S. 579 (1993), for expert testimony.[4]  The court, however, disagrees that Agent Satcher's testimony did not satisfy Rule 702's and *Daubert*'s requirements for expert testimony. For the reasons explained during the trial in responding to Defendant's oral motion for acquittal, the court determined that Agent Satcher was qualified to testify as an expert witness under Rule 702, given his training, experience, and specialized expertise regarding interstate commerce and the manufacture of firearms.  The court also explained why it believed Agent Satcher's testimony was relevant and reliable and determined that Defendant's objections went only to the weight of Agent Satcher's testimony, not its admissibility.

Though the court did not conduct a *Daubert* hearing before the second trial commenced, it had the benefit of hearing Agent Satcher's testimony during the first trial at which time it made similar findings.  Under the circumstances, a separate *Daubert* hearing was not required. *See United States v. Hoang*, 285 F. App'x 133, 136 (2008) (per curiam).[5]

---

[4] Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

District courts are assigned a gatekeeping role to determine the admissibility of expert testimony. *Daubert*, 509 U.S. at 592-98. The court must find that the evidence is both relevant and reliable before it may be admitted. *Id*.

[5] In rejecting the defendants' argument that the district court should have conducted a *Daubert* hearing to "determine whether the methods used by Government chemists to test for controlled substances were scientifically reliable," the Fifth Circuit in *Hoang* explained:

The district court is required by *Daubert* to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." [*Daubert*, 509 U.S.] at 592-

Further, Defendant's contention that Agent Satcher contradicted himself and "never produced any evidence such as tracing reports, ballistic reports, firearm measurements, or any type of documentation or data as proof that the firearms [at issue] had traveled in or affected interstate commerce" does not make Agent Satcher's interstate nexus testimony unreliable or insufficient. Def.'s Mot. 15-16. As the court explained in its charge to the jury, jurors were free to accept or reject Agent Satcher's testimony and give as much weight to it as they thought it deserved considering his education and experience, the soundness of the reasons given for his opinion, and all other evidence in the case. Jury Charge 7. As the jury found that the Government proved beyond a reasonable doubt all elements necessary for the section 922(g) offenses charged in Counts One and Two, the court reasonably infers that the jury did not attach much weight to the matters identified by Moore in assessing Agent Satcher's testimony, which clearly falls within the scope of its responsibilities. Viewing Agent Satcher's testimony and the Government's other evidence in the light most favorable to the Government, the court also determines that a reasonable jury could accept the relevant and admissible evidence as adequate and sufficient to support the conclusion that the Government proved beyond a reasonable doubt that the firearms at issue traveled in or affected interstate commerce. Accordingly, Moore is not entitled to a judgment of acquittal on this ground.

### 3.    Intimate Partner Evidence

Defendant contends that there was insufficient evidence to establish he had a felony conviction to support Count One, and there was "overwhelming evidence" establishing that he and the woman named in the protective order against him were not intimate partners as required to

---

93, 113 S.Ct. at 2796. The purpose of the assessment is to ensure reliability, and the inquiry is flexible. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The court has wide latitude in making its determination. *Id.* No separate hearing is necessary.

*Id.* at 136.

support a conviction for Count Two.  The court has previously addressed and rejected the first of these two arguments during the second trial and also in written orders.  For purposes of brevity, it **incorporates by reference** those orders as if repeated herein verbatim.  *See* November 19, 2019 Order 7-9 (Doc. 467); June 19, 2019 Mem. Opin. & Order 11-12 (Doc. 342); *see also* Tr. 138-46 (Vol. 2).  The court also disagrees that there was insufficient evidence for a reasonable jury to conclude that Defendant and the woman at issue were "intimate partners."  That there may have also been evidence to support a contrary finding is irrelevant, as the weight to be given any evidence was for the jury to decide, not the court or Defendant.  Thus, acquittal on this ground is not appropriate.

### 4.      *Rehaif*

This leaves only Defendant's *Rehaif* and double jeopardy grounds for acquittal. Regarding *Rehaif*, Defendant contends that the Indictment and Jury Charge are defective because, while they allege or state they he knew he belonged to the categories of persons under sections 922(g)(1) and (8), they do not allege or state that he also knew he was prohibited from possessing a firearm as a result of his status.  By way of example, Defendant maintains:

> [A] defendant could have plead[ed] guilty to a 2nd degree robbery offense in the [S]tate of Texas[,] which carries an imprisonment range of 2 to 20 years but received deferred probation and had his conviction dismissed after its completion.  In this instance, a defendant would very well have knowledge that he was convicted of a crime punishable by a term of imprisonment in excess of one year [] but still believe that he is not a convicted felon due to successfully completing probation and having said conviction dismissed. This is why it is essential for a § 922(g) indictment to plainly articulate in the charge that the defendant knew that his conviction of a crime punishable by imprisonment for a term in excess of one year "***prohibited him from possessing a firearm***," as opposed to only stating that [the] defendant knew he was convicted of a crime punishable by imprisonment for a term in excess of one year.

Def.'s Mot. 3-4.

The Government responds that it is not required post-*Rehaif*, as Moore suggests, to show that Moore's violation of section 922(g) was willfully committed or that he knew his conduct was illegal. The Government contends that such an argument misconstrues *Rehaif* and the reach of the Supreme Court's holding.   The Government, therefore, asserts that it was not required to prove that Moore knew he was prohibited from possessing a firearm or that he was aware of the precise law forbidding his conduct even though, according to the Government, this was proved.   The Government further asserts that, as of the date of its response, only the Sixth Circuit in *United States v. Bowens*, 938 F.3d 790, 797-98 (6th Cir. 2019), has addressed and rejected outright a similar argument by a defendant that *Rehaif* requires the Government to prove that the defendant knew both his status and that he was prohibited from possessing a firearm.

Based on the court's review of *Rehaif* and the reasoning in *Bowens*, the court agrees with the Government that Moore's "reading of *Rehaif* goes too far" because such an argument "runs headlong into the venerable maxim that ignorance of the law is no excuse. *Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code." *Bowens*, 938 F.3d at 797.   Accordingly, Defendant is not entitled to acquittal on this ground.

### 5.    Double Jeopardy

Finally, Moore reasserts his double jeopardy argument, contending for the reasons argued in his prior motion to dismiss the Indictment (Doc. 423) and the Fifth Circuit's opinion in *Munoz-Romo* that, now that he has been found guilty under multiple subsections of section 922(g), the Government must elect which of the two counts it will proceed to sentencing on, so that only one sentence for one offense will be imposed.

**Memorandum Opinion and Order – Page 11**

The Government responds that Moore's double jeopardy claim and argument that the charges in Indictment are multiplicitous do not have legal or factual support because the Indictment, as amended, eliminated any potential multiplicity by clarifying that Counts One and Two are for "separate sets of weapons possessed at separate times in separate incidents of possession with separate transactions." Gov't Resp. 21.   In addition, the Government contends that the allegations in the Indictment reflect the evidence during the first trial by showing that:

> Moore did not simultaneously engage in undifferentiated acts of possession or receipt of multiple firearms. Instead, [he] entered Loan Star Pawn at approximately 9:56 a.m. on August 11, 2015, in possession of a Ruger Pistol and a Mossberg shotgun. TR2, Vol. 1, p. 58. He pawned the Ruger Pistol and the Mossberg shotgun, relinquished his possession of them, signed a pawn slip, received his money, and left the store. *Id.* at 58-62. Seven hours later, Moore returned to Loan Star Pawn at approximately 16:59 (4:59 p.m.) in possession of two entirely different firearms—a Taurus 9mm pistol and a Cugir semi-automatic rifle. *Id.* at 65-68. Moore pawned the Taurus 9mm pistol and the Cugir semi-automatic rifle, relinquished his possession of them, signed another pawn slip, received more money, and left the store. *Id.* at 65-71. The pawn receipt numbers for these transactions were not sequential because other transactions were conducted at the pawn shop that further separated Moore's transactions and firearm possessions. *Id.* at 64-66. Consequently, Moore's prosecution is not multiplicitous because "it involves different firearms received and possessed by [Moore] at different times."

Gov't Resp. 21-22 (citations omitted).[6]

In response to Moore's prior argument that his conduct represents a single, continuing scheme such that the Government must prove the "weapons were acquired or stored at different times and places" to show separate charges, the Government contends that this is not the only way of establishing separate charges. *Id.* at 22.   According to the Government, "[a]n offense is separate

---

[6] For support, the Government cites *Meza*, 701 F.3d at n.9, which in turn cites *United States v. Harper*, 802 F.2d 115, 118-19 & n.4 (5th Cir. 1986). The Government also cites *United States v. Everett*, 237 F.3d 631 (5th Cir. 2000); and *United States v. Sanchez*, 675 F. App'x 433, 436 (5th Cir. 2017).

and distinct when conviction under one count requires proof of an additional fact that the other count does not require," and "[t]hat additional fact can be as simple as the crimes requiring proof of two different documents representing two different transactions." *Id*. (quoting *United States v. Guzman*, 781 F.2d 428, 432-33 (5th Cir. 1986)).  The Government contends that this requirement is satisfied here because the evidence at trial establishes that Moore's conduct involved "two separate and distinct transactions" as documented by two separate pawn shop receipts.  *Id.* (citing Gov't Trial Exs. 10, 11).

"Multiplicity" refers to "charging a single offense in more than one count in an indictment." *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991) (citation omitted). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *Id.*  "The rule against multiplicity stems from the 5th Amendment to the Constitution which forbids placing a defendant twice in jeopardy for one offense[,] . . . prohibits the Government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act."  *United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir. 1995); *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992).   When a double jeopardy challenge arises from a single prosecution, courts consider "whether multiple punishments are authorized [by the statute as reflected in the intent of the legislature] despite the commonality of the elements of proof."  *Id.* at 919 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).  Courts also consider "whether a continuous transaction results in the commission of but a single offense or separate offenses" by determining "whether separate and distinct prohibited acts, made punishable by law, have been committed." *Lemons*, 941 F.2d at 317 (citation omitted).

*United States v. Berry*, a case often cited by the Fifth Circuit for the proposition that "simultaneous convictions and sentences for the same criminal act involving possession of a firearm and possession of ammunition violate double jeopardy,"[7] is instructive here even though this case involves only possession of multiple firearms.  In *Berry*, the defendant "occupied an apartment in Jonathan's Inn Motel in Groves, Texas[,] which was searched pursuant to a valid search warrant." *Berry*, 977 F.2d at 917-18 (footnote omitted).  That "search yielded two .38 caliber handguns (one found in Berry's jacket, the other in his car) with ammunition, a Marlin 30/30 for which Berry apparently did not possess ammunition, and a photograph of Berry holding two of the weapons." *Id.*   Berry, a convicted felon, was convicted on three separate counts of possessing a firearm and one count of possessing ammunition in violation of § 922(g)(1), in addition to one count for possessing a handgun during the commission of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). *Id.* at 917-19.

Because Berry's conviction under § 924(c) involved "an element distinct from any other offense charged, drug trafficking, and d[id] not require proof of a prior felony conviction," the Fifth Circuit concluded that it did not raise double jeopardy concerns.  *Id.* at 919. On the other hand, the court found that Berry's conviction under § 922(g)(1) "raise[d] serious questions of double jeopardy," as it was "premised on one episode of possession of firearms and ammunition but he was convicted and sentenced separately for each weapon and the ammunition possessed."  *Id*. at 918. The court in *Berry* explained:

---

[7] *United States v. Meza*, 701 F.3d 411, 432-33 (5th Cir. 2012) (discussing *Berry* and citing Fifth Circuit cases that have followed the reasoning in *Berry*).

**Memorandum Opinion and Order – Page 14**

Berry's multiple convictions and sentences for violation of 18 U.S.C. § 922(g)(1) . . . are not so readily dispatched. Berry was convicted for possession of the guns only, there was no allegation or proof of other elements such as a separate act of transportation in interstate commerce, that the guns were procured by misrepresentation, that Berry was illegally in the country, or that one of the weapons was illegally altered. The evil Congress sought to suppress by section 922 was the arming of felons; the section is based on the status of the offender and not the number of guns possessed. For the same reasons, we cannot conclude that Congress intended the simultaneous possession of ammunition to stand as a distinct unit of prosecution.

*Id.* at 919 (footnotes omitted). The court in *Berry* continued:

In such an instance, the government may charge and try a defendant for multiple offenses, but there may not be simultaneous convictions and sentences for should the jury return guilty verdicts for each count, . . . the district judge should enter judgment on only one of the statutory offenses.

If in doubt of its ability to prove possession of any of the weapons involved, the government properly could have sought to prove possession of all. *Moreover, had the government [had] evidence that Berry obtained the guns at different times or stored them in separate places, then it could have sought to prove that*. But simultaneous convictions and sentences for the same criminal act violates the double jeopardy clause.

*Id.* at 920 (emphasis added and footnotes omitted).

The suggestion in *Berry*, that sentencing on three separate counts might have been appropriate if the Government had demonstrated that the defendant obtained the guns at different times, or stored them in different places, has been used by some courts as a way to distinguish the holding in *Berry*. In *Meza*, although the Fifth Circuit determined based on *Berry* that a double jeopardy violation had occurred because the defendant "was convicted under § 922(g)(1) for simultaneous possession of a firearm and ammunition, both of which were found during the single police search of his property," and the "indictment allege[d] that [he] possessed both the firearm and ammunition that day (July 22, 2009)," it went on to explain that it has also quoted *Berry* in a number

of unpublished opinions to distinguish its outcome when the record "prove[d] that [the defendant] obtained the firearm and ammunition on different occasions." *Meza*, 701 F.3d at 433 (citing *United States v. Castro*, 227 F. App'x 386, 386 (5th Cir.2007) (unpublished); and *United States v. Everett*, 237 F.3d 631, 2000 WL 1701776, at *6 (5th Cir. 2000) (unpublished)).  The Fifth Circuit ultimately concluded that *Meza* could not be distinguished from *Berry* because:

> Legally, . . .  the government did not charge Meza with receiving or possessing at some earlier date the gun or the ammunition. Meza was charged, in each count singularly, with possession on July 22, 2009. Correspondingly, factually, none of the witnesses testified as to earlier dates on which Meza received or obtained, hence earlier possessed, the firearm and ammunition.  The only relevant, affirmative proof implying any such argument would be Sanchez's prior inconsistent statement that he sold the gun (but not ammunition) to Meza. This recanted statement, however, was admitted for impeachment only. *In summary, absent an indictment charging Meza with possessing or receiving the firearms and ammunition on separate occasions, and proof and argument supporting the same, his dual convictions and sentences under § 922(g)(1) cannot stand under Berry*.

*Meza*, 701 F.3d at 433 (emphasis added and footnote omitted).

Unlike *Meza* and *Berry*, Counts One and Two of the Indictment in this case charge Moore with possessing four different firearms at two different times on August 11, 2015.  According to the Indictment, Moore possessed a Taurus pistol and CN Romarn SA Cugir rifle on August 11, 2015, at 9:56 a.m., and later that day at 4:59 p.m., he possessed a Ruger pistol and a Mossberg shotgun. At trial, the Government's evidence established that Moore first visited Lone Star Pawn twice on August 11, 2015.

According to the Government's evidence, Moore went to the pawn shop the first time at 9:56 a.m., completed necessary paperwork, received $450 in exchange for pawning the Taurus pistol and CN Romarn SA Cugir rifle, and was provided a receipt for the transaction with the number 108661.

He then left the premises and did not return until 4:59 p.m., approximately seven hours later.  During his second visit to the pawn shop, Moore brought the Ruger pistol and a Mossberg shotgun.  Despite having completed a pawn transaction earlier that same day, he was required to go through all of the same steps of completing necessary documentation to pawn the two additional firearms.  After completing the documentation for the second pawn transaction, he was paid $350 for the two firearms and was provided a separate receipt for the second transaction with the number 108666.  Charles Reyna, the owner of Lone Star Pawn, testified that the difference in the transaction numbers indicated that there were other pawn shop transactions that occurred between the first and second times Moore visited the pawn shop to pawn the firearms.  Gov't Exs. 10, 11; Tr. 57-69 (Vol. 1).

Based on this evidence, the court cannot ascertain the precise date when Moore first obtained the four firearms; however, the Indictment charging him with possessing the firearms on separate occasions and the evidence establishing that he possessed the firearms at different times during separate pawn shop transactions are sufficient to distinguish this case from *Berry* and *Meza*. Accordingly, simultaneous convictions and sentences for Counts One and Two under sections 922(g)(1) and (g)(8) will not violate the double jeopardy clause because the two counts are based on separate transactions involving separate and distinct acts of firearm possession by Moore.  The court will, therefore, deny Defendant's Motion for Acquittal on this ground.

## III.    Conclusion

For the reasons explained, the court **grants** the Government's Motion for Leave (Doc. 518); and **denies** Defendant's Motion for Acquittal (Doc. 512).

**It is so ordered** this 15th day of July, 2020.

Sam A. Lindsay
United States District Judge