IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JAYSON HOWARD MOORE** | § | |
| | § | |
| | § | |
| v. | § | Criminal No. **3:15-CR-533-L** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions by Defendant Jayson Howard Moore ("Defendant" or "Mr. Moore"): Motion for Order to Forward and Designate the Record on Appeal (Doc. 592), filed March 30, 2021; Request for Transcripts to be Paid at Government's Expense (Doc. 604), filed June 8, 2021; Emergency Motion for Order to Designate and Forward Partial Record for Pending Motion to Stay (Doc. 607), filed June 16, 2021; and Motion to Withdraw And/Or Disregard Dkt. 607 (Doc. 611), filed July 1, 2021.  On June 11, 2021, the Government filed a response in opposition to Defendant's Request for Transcripts to be Paid at Government's Expense to which Defendant filed a Motion for Leave to Reply (Doc. 608) on June 17, 2021.  For the reasons that follow, the court **grants** Defendant's Motion for Leave to Reply (Doc. 608); **grants** Defendant's Motion to Withdraw And/Or Disregard Dkt. 607 (Doc. 611); and **denies** or **denies as moot** Defendant's remaining motions.

## I.      Background

On August 22, 2015, Mr. Moore was charged in a one-count Indictment with possessing four firearms in violation of 18 U.S.C. 922(g)(1).  Mr. Moore was subsequently arrested on October 29, 2015, by Irving Police Department ("IPD") officers pursuant to the felony arrest warrant issued by United States Magistrate Judge Paul D. Stickney on September 28, 2015, in

related case 3:15-MJ-720-BF.  Mr. Moore was transferred to federal custody on October 30, 2015, and ordered detained.

In the early stages of this case, Mr. Moore was represented by four different attorneys who were appointed pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  The last of these attorneys, Christopher Lewis, filed a motion in January 2016 to determine Mr. Moore's mental competency, which was granted by the court after conducting a hearing pursuant to 18 U.S.C. §§ 4241(e) and 4247(d) to determine whether Mr. Moore was competent to stand trial in this criminal case. The court then vacated the April 2016 trial setting and ordered a psychiatric and psychological examination of Mr. Moore.

Subsequently, in January 2107, Mr. Lewis filed a notice of insanity defense. Mr. Moore disagreed with and was opposed to proceeding with an insanity defense and moved to represent himself.  This in turn prompted the Government to move for a pretrial psychological examination of Defendant under 18 U.S.C. § 4242(a) to determine his sanity at the time of the alleged offense. The Government also moved to involuntarily medicate Mr. Moore. This request was also opposed by Mr. Moore and denied by the court on January 23, 2018 (Doc. 125).  After receiving additional evidence and conducting a second hearing in which it heard testimony from Mr. Moore and Dr. Lea Ann Preston Baecht, Ph.D., the court concluded that Mr. Moore was *presently* competent to stand trial.  After Mr. Moore persisted in proceeding pro se, the court conducted a *Faretta* hearing[1] on February 26, 2018, determined that he had "knowingly, voluntarily, and intelligently waived his right to be represented by counsel in this case and ha[d] elected to represent himself" in this case, and granted his request to proceed pro se.  Doc. 133.

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

Mr. Moore filed a number of pro se pretrial motions that were denied by the court, including a motion to dismiss the Indictment and motion to suppress on the grounds that his arrest and the seizure of the firearms was unlawful. *See* Doc. 260.  On August 7, 2018, Mr. Moore was convicted by a jury with respect to Count One of the Second Superseding Indictment (Doc. 197), which charged him with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Sentencing was set for January 14, 2019, but was delayed as a result of the postjudgment motions filed by Defendant Moore between August 24, 2018, and February 28, 2019, including a motion for acquittal or new trial and motion for recusal of the undersigned.  The motion to recuse was later withdrawn by Defendant, his motion for acquittal or new trial was denied on June 19, 2019 (Doc. 342), and sentencing was reset for July 18, 2019.

Before Mr. Moore was sentenced, the United States Supreme Court entered its decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which added a new element for felon-in-possession offenses. In light of *Rehaif* and Mr. Moore's decision to proceed with a new trial, the court vacated his guilty verdict on July 18, 2019, and ordered a new trial. Mr. Moore, who by this time had been detained forty-five months pending his first trial and sentencing hearing, was released with pretrial supervision pending his second trial.

On September 25, 2019, the Government filed its Fifth Superseding Indictment (Doc. 403), which charged Mr. Moore with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), as well as Possession of a Firearm by a Person Subject to a Domestic Violence Protective Order, in violation of §§ 922(g)(8) and 924(a)(2) (Count Two). On November 25, 2019, Mr. Moore was found guilty by a jury of both offenses charged in the Fifth Superseding Indictment.  After the trial, he was allowed to continue on release with supervision pending his sentencing.  Mr. Moore initially requested that his sentencing be expedited but

sentencing was ultimately delayed because of a number of last-minute filings and requests for continuances by the parties, including those related to Mr. Moore's second motion for judgment of acquittal, which was denied on July 15, 2020 (Doc. 528); an unexpected forfeiture dispute that arose after the Government filed its Motion for Preliminary Order of Forfeiture on July 9, 2020, with respect to the four firearms and ammunition seized in 2015; winter weather conditions in December 2020; and the COVID-19 Pandemic.

A forfeiture hearing was held on March 21, 2021. The court's order granting the Government's Motion for Preliminary Order of Forfeiture and the separate Preliminary Order of Forfeiture were entered on March 22, 2021 (Docs. 578, 579). A sentencing hearing was conducted on March 22 and 23, 2021. Mr. Moore was sentenced to time-served (forty-five months custody) and three years of supervised release as to Counts One and Two. The sentence of time-served constituted a variance under 18 U.S.C. § 3553(a) from the advisory guideline range of 51 to 63 months imprisonment. The court's Judgment and Statement of Reasons were entered on March 29, 2021 (Docs. 587, 588).

Mr. Moore filed his Notice of Appeal (Doc. 590) and Motion for Order to Forward and Designate the Record on Appeal (Doc. 592) on March 30, 2021.  A short time later, Mr. Moore filed his Emergency Motion for Stay of the Final Judgment and Sentence and Order of Forfeiture Pending Appeal ("Motion to Stay") (Doc. 594), which was denied on April 16, 2021 (Doc. 597). On April 12, 2021, he filed a Duplicate Notice of Appeal (Doc. 596) that is identical to his earlier Notice of Appeal. Approximately two months later, he filed the remaining postjudgment motions that are the subject of this memorandum opinion and order seeking various documents and transcripts for use on appeal.

## II.  Motion for Order to Forward and Designate the Record on Appeal (Doc. 592)

Pursuant to Federal Rules of Appellate Procedure 10(a), 11(a), and 11(b)(2), Defendant, who has elected to proceed pro se on appeal, requests that the court issue an order requiring the district clerk to forward "the entire record" to the Fifth Circuit Court of the Appeals, including: (1) all "original papers and exhibits" admitted in his first and second trials and any related hearings; (2) all transcripts and audio of all proceedings, including all grand jury proceedings that may be in the Government's possession; and (3) certified copies of all docket sheet entries.

None of the appellate rules of procedure cited in Defendant's motion supports the issuance of an order by this court requiring the district court to forward "the entire record" in this case to the Fifth Circuit.  Rule 10(a) merely identifies the potential items that constitute the record on appeal.  Rule 11(a) sets forth *Defendant's duty as the appellant*, not the district clerk's or this court's duty, in filing a notice of appeal and "do[ing] whatever else is necessary for the clerk to assemble and forward the record."  Rule 10(b) similarly explains that it is the *appellant's duty* to order the transcript from the court reporter within 14 days after filing a notice of appeal.  Rule 11(b)(2) addresses the district clerk's duty to forward the record *once it is complete*, subject to certain exceptions for unusually heavy or bulky materials, unless the party designating such materials has arranged with the clerk for their transportation and receipt.

Instead of complying with the applicable appellate rules and procedures by submitting an appropriate transcript form and request within fourteen days of filing his Notice of Appeal on March 30, 2021, and making satisfactory arrangements with the court reporter for payment of the requested transcripts, Defendant filed the instant motion.  According to the docket sheet, Defendant did not submit a transcript order form or motion for certain transcripts to be provided

at the Government's expense[2] until six weeks after he filed his original Notice of Appeal (Doc. 509), which is identical to his subsequent Duplicate Notice of Appeal (Doc. 596).  Additionally, since the entry of judgment in this case, Defendant has filed three motions in which he has requested or designated different items for purposes of appeal and a separate request to withdraw one of these prior motions, creating unnecessary confusion.  Thus, any delay in the completion of the appellate record is attributable to Defendant, not the district clerk or this court.

Moreover, while the generic list of items requested by Defendant tracks the items listed in Rule 10(a), that does not mean he is entitled, *at no cost*, to have every transcript, recording, and document filed or admitted in this case to be included in the record on appeal. A trial transcript is often needed for appellate review; however, there is no automatic right or entitlement to receive unlimited free copies of transcripts or other documents even when the party requesting such items is allowed to proceed *in forma pauperis* ("IFP") on appeal.  *See Draper v. Washington*, 372 U.S. 487, 495-96 (1963) (explaining that, while an indigent criminal defendant has a right to receive a transcript of his trial or some equivalent to the extent necessary to prepare an appeal of his conviction, the government is not required to pay for transcripts not relevant to the matters appealed or necessary to resolve the issues appealed);[3] *Harvey v. Andrist*, 754 F.2d 569 (5th Cir. 1985) (explaining that, to obtain a transcript at government expense, a party proceeding IFP on appeal must establish that the requested transcript is necessary for the proper disposition of the appeal) (citations omitted).

---

[2] *See* Fed. R. App. P. 10(b)(4) ("At the time of ordering, a party must make satisfactory arrangements with the reporter for paying the cost of the transcript.").

[3] The Court in *Draper* reasoned that "the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the [government] must waste its funds by providing what is unnecessary for adequate appellate review." *Draper*, 372 U.S. at 495-96. Thus, for example, if the issues urged by the defendant on appeal "relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided." *Id.*

Memorandum Opinion and Order – Page 6

The matters designated by Defendant far exceed what is relevant or necessary to prosecute an appeal of the general issues identified in his two Notices of Appeal (Docs. 590, 596).[4] Regardless, Rule 10(a) does not support issuance of an order requiring the district clerk to assemble and forward "the entire record" to the Fifth Circuit.  The court, therefore, **denies** as premature, overly broad, and procedurally defective Defendant's Motion for Order to Forward and Designate the Record on Appeal (Doc. 592).

### III.   Emergency Motion for Order to Designate and Forward Partial Record for Pending Motion to Stay (Doc. 607) and Motion to Withdraw DKT. 607 (Doc. 611)

On June 16, 2021, *two months after* the undersigned denied Defendant's Motion for Stay (Doc. 594), Defendant filed a similar emergency motion to stay with the Fifth Circuit and moved, on an emergency basis, in this court "For [an] Order to Designate and Forward Partial Record For Pending Motion to Stay" (Doc. 607).  Once again, Defendant sought an order from the court requiring the district clerk to forward certified copies of certain documents (thirteen total) to the Fifth Circuit.  Why Defendant believed that this request warranted emergency consideration given his two-month delay in seeking relief from the Fifth Circuit is unclear.

Two weeks later, after the court had expended an inordinate amount of time reviewing Defendant's emergency motion and the thirteen documents identified in the motion, and had determined that most of the documents have no relevance to his prior or current motion to stay, Defendant moved to withdraw his emergency motion on July 1, 2021.  Defendant explained that the Fifth Circuit had not requested and did not need the partial record sought, on an emergency basis or otherwise, to decide his pending motion to stay.

---

[4] In both Notices of Appeal, Defendant indicates, without elaborating, that he is appealing: (1) the final judgment and his conviction; (2) the court's order of forfeiture (firearms and ammunition); and (3) the court's order (Doc. 554) and ruling that "it lacked jurisdiction to impose an injunction on the Government to correct [his] criminal record after the Government unlawfully altered his NCIC Criminal history to reflect a felony probation which had been dismissed by a judge for the State of Texas nearly 8 years ago." Def.'s Notices of Appeal (Docs. 590, 596).

The time that the court devoted to this hastily filed motion would have been better used on Defendant's remaining transcript request.  In any event, the court **grants** Defendant's Motion to Withdraw DKT. 607 (Doc. 611) and **denies as moot** his Emergency Motion for Order to Designate and Forward Partial Record for Pending Motion to Stay (Doc. 607).

## IV.   Request for Transcripts to be Paid at Government's Expense (Doc. 604) and Motion for Leave to File Reply (Doc. 608)

### A.   Motion For Leave to File Reply (Doc. 608)

In his Motion for Leave, Defendant contends that he should be allowed to reply to the Government's arguments in opposition to his request to have it pay for certain transcripts because the Fifth Circuit already granted him IFP status for purposes of his appeal, and the Government's response casts doubt on his status as an indigent litigant on appeal.  Defendant's Motion for Leave does not state whether the Government opposes his request to file a reply in support of his Request for Transcripts to be Paid at the Government's Expense.  No response, however, to the Motion for Leave was filed.  The court, therefore, **grants** the Motion for Leave (Doc. 608)[5] and considers Defendant's reply that is attached to his Motion for Leave in ruling on his Request for Transcripts to be Paid at the Government's Expense, which, as noted, is opposed by the Government.

### B.   Request for Transcripts to be Paid at Government's Expense (Doc. 604)

#### 1.   The Parties' Contentions

In his one-page motion, which was filed June 8, 2021, Defendant identifies the following transcripts for eight hearings between February 11, 2016, to March 24, 2021, that he intends to rely on in support of his appeal:

---

[5] This Motion for Leave was granted by electronic order (Doc. 609).  The court includes it again here only to explain and make clear to the parties that Defendant's reply was considered in ruling on his Request for Transcripts to be Paid at the Government's Expense (Doc. 604).

| HEARING DATE | PROCEEDING | JUDGE |
|---|---|---|
| 2/11/2016 | Competency Hearing | Hon. Judge Sam A. Lindsay |
| 4/26/2016 | Competency Hearing | Hon. Judge Sam A. Lindsay |
| 1/17/2017 | Conference / Hearing | Hon. Judge Sam A. Lindsay |
| 5/9/2018 | Discovery Hearing | Hon. Judge Sam A. Lindsay |
| 11/15/2019 | Arraignment of Fifth Superseding Indictment | Hon. Judge Sam A. Lindsay |
| 11/22/2019 | Ex-parte Voir Dire of jurors Vol.4 pg.98-114 | Hon. Judge Sam A. Lindsay |
| 3/22/2021 | Forfeiture Hearing | Hon. Judge Sam A. Lindsay |
| 03/23 -03/24/2021 | Sentencing Hearing | Hon. Judge Sam A. Lindsay |

Def.'s Mot. 1 (Doc. 604).   Defendant requests that the court enter an order requiring the Government to pay the court reporter for these transcripts.   In support of this request, Defendant states:

> Pursuant to the letter Pro Se Appellant Jayson Howard Moore received from the Circuit Clerk of the Fifth Circuit on June 1, 2021, Appellant hereby submits this motion as a request for the [identified] transcripts that were ordered from this court's court reporter to be paid at the government's expense, as Appellant is indigent and proceeding *in forma pauperis* on appeal.

*Id.*

The Government contends that Defendant should be required to contribute to the cost of the requested transcripts and submit an updated financial affidavit so that his financial status can be reevaluated.   The Government asserts that considerable time has passed since Defendant first submitted a financial affidavit in October 2015, and, as indicated by the Presentence Investigation Report ("PSR") prepared by the probation officer, there have been significant changes to his financial status since he was released from prison.   In this regard, the Government asserts:

> According to Moore's last Presentence Investigation Report (PSR), Moore has also maintained full-time employment since December 23, 2019. Dkt. 497-1, ¶ 82. Moore has purchased a 2004 Honda Accord for $2,000 and maintained a positive monthly cash flow of approximately $1,307. *Id.* [] ¶ 88. Moore's most recent Personal Financial Statement was dated January 27, 2020. *Id.* [] ¶ 86. So, that

> statement is now almost 1½ years old. Even then, that statement was missing information about Moore's assets and liabilities. *Id.* ¶[¶] 87, 89.

Gov't Resp. 1-2 (footnote omitted).

The Government argues that Defendant should be ordered to disclose "not only his own funds, but also any funds or things of value raised for his defense or litigation—whether criminal or civil—or funds/things of value subject to his control[,] even if they are in the name of someone else, an organization, or an entity." *Id.* at 2. The Government contends that Defendant should be required to contribute to the cost of the transcripts requested because, even if he is unable to pay the full cost, he may still be able to pay a portion of the cost. If that is the case here, the Government requests that the court consider ordering him to pay a "significant portion of each transcript or item that he orders to encourage [him] not to incur unnecessary expenses." *Id.*

Defendant replies that, contrary to the Government, he was already granted IFP status by the Fifth Circuit. For support, Defendant notes that the Fifth Circuit docketed his appeal on June 1, 2021, and granted his motion to proceed "Pro Se *in forma pauperis* pursuant to Rule 24(a)(3) of the Federal Rules of Appellate Procedure." Def.'s Reply 1 (footnote and citation omitted). As a result, Defendant contends that he was "granted the right to proceed on appeal without having to pay any applicable filing fees established by 28 U.S.C. § 1913 and 1917, or any other costs related to his appeal pursuant to 28 U.S.C. § 1915." *Id.* In the transcript order forms that Defendant submitted to the court reporter, he similarly asserts and certifies that "satisfactory financial arrangements have been made" for the Government to pay for the requested transcripts "pursuant to 28 U.S.C. § 1913; 1915; 1917." Exs. 1 & 2 to Def.'s Mot. (Doc. 604); *see also* Docs. 602 & 603 (transcript order forms, filed July 8, 2021). Defendant further asserts that the Fifth Circuit did not require him to obtain the district court's approval to proceed IFP on appeal, and, instead, only advised him to make necessary arrangements for the transcripts to be paid. He, therefore, argues

that further approval by the undersigned to proceed IFP on appeal is not necessary to receive the requested transcripts.

In addition, Defendant contends that the Government did not contest his indigent status in the district court or on appeal in response to his motion, and its contention that his financial status has changed is based only on speculation without any supporting evidence. Defendant argues that the PSR's inclusion of information regarding his debts totaling $38,147 supports his contention regarding his indigent or pauper status for purposes of appeal. He contends that his $1,300 in monthly disposable income during the past eighteen months does not affect his indigent status. Finally, Defendant asserts that this court does not have jurisdiction to revoke his IFP appellate status because doing so would amount to overruling the Fifth Circuit's decision to allow him to proceed IFP on appeal.

### 2.    Discussion

In federal criminal proceedings, the United States is required by statute to pay for transcripts in the following circumstances:

> Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. [§] 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. . . . Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question).

28 U.S.C. § 753(f).

This action is not a civil habeas corpus proceeding, and Mr. Moore does not contend that he is entitled to obtain the requested transcripts at the Government's expense because he is proceeding under the CJA with appointed counsel.[6] Instead, Defendant is proceeding pro se and

---

[6] Mr. Moore was initially appointed counsel under the CJA to represent him in all proceedings in this case in the district court through appeal. After much back and forth and flip-flopping during the early stages of this case between

asserts that he is entitled to receive free copies of certain transcripts because of his IFP status.  The court, therefore, considers whether he is entitled under section 753(f) to free copies of the transcripts requested because they were "furnished in other proceedings to [a] person[] permitted to appeal in forma pauperis."  *See id.*

As noted, Defendant contends in his motion that the Fifth Circuit granted him IFP status for purposes of appeal.  On the other hand, he contends in his motions and filings with the Fifth Circuit in which he requested to proceed pro se on appeal that he received prior approval from the district court to proceed pro se and IFP.  He, therefore, argues, pursuant to Federal Rule of Appellate Procedure 24, that he was not required to obtain further authorization from the district court to proceed IFP on appeal.  For support, Defendant asserts that, although this court "refused to formally rule" on his Motion to Proceed In Forma Pauperis (Doc. 130), dated February 12, 2018, it verbally acknowledged his status as a pauper.  Neither contention is entirely accurate.

Federal Rule of Appellate Procedure 24 sets forth the procedure for proceeding IFP on appeal:

(a) Leave to Proceed In Forma Pauperis.

(1) Motion in the District Court. Except as stated in Rule 24(a)(3), a party to a district-court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an affidavit that:

(A) shows in the detail prescribed by Form 4 of the Appendix of Forms the party's inability to pay or to give security for fees and costs;

(B) claims an entitlement to redress; and

(C) states the issues that the party intends to present on appeal.

---

wanting counsel and not wanting counsel, however, he ultimately waived his right to be represented by counsel and chose to proceed pro se in this case.  In addition, after filing his pro se Notice of Appeals, he requested and was allowed by the Fifth Circuit to proceed pro se on appeal.

(2) Action on the Motion. If the district court grants the motion, the party may proceed on appeal without prepaying or giving security for fees and costs, unless a statute provides otherwise. If the district court denies the motion, it must state its reasons in writing.

(3) Prior Approval. A party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:

> (A) the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding; or

> (B) a statute provides otherwise.

(4) Notice of District Court's Denial. The district clerk must immediately notify the parties and the court of appeals when the district court does any of the following:

> (A) denies a motion to proceed on appeal in forma pauperis;

> (B) certifies that the appeal is not taken in good faith; or

> (C) finds that the party is not otherwise entitled to proceed in forma pauperis.

### a.        The Fifth Circuit Did Not Grant Defendant IFP Status.

On April 7, 2021, the deputy clerk for the Fifth Circuit sent Mr. Moore a letter advising him that "we have docketed [your] appeal."  Because Defendant filed his notice of appeal pro se, the deputy clerk further advised that, before his appeal could proceed, he must do one of the following:

> (1) retain an appellate attorney; (2) file a motion for appointment of counsel, and complete and return the enclosed CJA 23 financial affidavit with your motion; or (3) clearly and unequivocally express your intent to proceed pro se in writing. **If it is your intent to proceed pro se, you must also pay a filing fee for your notice of appeal unless the district court has entered an order exempting you from paying the fee under Fed. R. App. P. 24, or file a motion with the district court clerk for leave to proceed in forma pauperis on appeal.**

Apr. 7, 2020 Letter (Appeal No. 21-10345) (emphasis added).  Attached to the letter is a copy of CJA Form 23 Financial Affidavit for use in requesting an attorney, expert, or other services without payment of a fee.

Defendant selected the third of these options and filed a Statement of Intent to Proceed Pro Se on Appeal that also included what he referred to as his Proof of Prior Approval to Proceed In Forma Pauperis.  In this filing, Defendant contended that, although the undersigned did not formally rule on his Motion to Proceed IFP (Doc. 130), it "acknowledged [his] status as a pauper during his *Faretta* hearing" that was held on February 26, 2018.  Appellant's Statement of Intent 3. Defendant, therefore, asserted in his Statement of Intent to the Fifth Circuit that, pursuant to Federal Rule of Civil Procedure 24(a)(3) and 28 U.S.C. § 1915, he was entitled to proceed IFP on appeal without further authorization from this court.

On June 1, 2021, the Fifth Circuit entered an order allowing Defendant to proceed pro se on appeal.  Contrary to Defendant's assertion, this order did not address whether he was also entitled to proceed IFP on appeal.  Likewise, the June 1, 2021 correspondence from the deputy clerk for the Fifth Circuit did not advise Defendant that he had been granted IFP status on appeal. Instead, the clerk's letter advised Defendant that his appeal had been docketed, and that it was his obligation to order and make arrangements to pay for any requested transcripts as follows:

> You must first complete the transcript order form the district court clerk provided you. When completed, this meets your obligation to order the necessary portion(s) of the court reporter's transcript, see Fed. R. App. P. 10(b). Second, you must make financial arrangements with the court reporter to pay for the transcript. **If you are pro se and unable to afford payment, you must file a motion with the district court requesting a transcript at government expense, and notify this court of the filing.** We will then coordinate with the court reporter for a time to file the transcript. The court reporter should contact you directly if an extension of time is granted to file the transcript. **If you do not order or make arrangements to pay for the transcript within 15 days, we will dismiss your appeal without further notice, unless the case is a criminal appeal and you are proceeding In Forma Pauperis, see 5th Cir. R. 42.3.**

June 1, 2021 Letter (emphasis added).  Like the Fifth Circuit's order, this letter said nothing about Defendant's entitlement to proceed IFP on appeal.  It simply notified him that *if* he was proceeding pro se *and* was unable to afford to pay for transcripts he requested for his appeal, he needed to file a motion with this court requesting that the Government pay for the transcripts.  Thus, Mr. Moore's jurisdictional argument and contention that the Fifth Circuit granted him IFP status on appeal is not supported by the correspondence he received from the Fifth Circuit's deputy clerk.  The court, therefore, addresses the alternative argument that Defendant presented to the Fifth Circuit— that he may proceed IFP on appeal without further authorization from the district court because he received prior verbal approval in the district court to proceed IFP.

> **b.      Even Assuming that Defendant Was Not Required to Obtain Further Authorization to Proceed IFP on Appeal, He is Not Entitled to Free Transcripts Under § 753(f).**

Defendant relies on Rule 24(a)(3) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1915 to support his contention that he was not required to obtain further authorization from the district court to proceed on appeal IFP as a prerequisite to obtaining the requested transcripts at the Government's expense.

As noted, Rule 24(a)(3) sets forth two situations that a party may proceed on appeal IFP without further authorization or approval: "[a] party who was permitted to proceed [IFP] in the district-court action, *or* who was determined to be financially unable to obtain an adequate defense in a criminal case." Fed. R. App. P. 24(a)(3) (emphasis added). Whether a party is entitled to proceed IFP is determined under section 1915. Whether a party is entitled to appointment of counsel because of financial inability is determined under 18 U.S.C. § 3006A.

A different financial standard applies under section 3006A than is used in a section 1915 analysis. Section 1915 requires persons seeking to proceed IFP to show by affidavit inability to

pay or give security for fees and costs. § 1915(a)(1).  The affidavit must "state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." § 1915(a)(2). "To proceed on appeal [IFP], a litigant must be economically eligible, *and* his appeal must not be frivolous."  *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986) (per curiam) (citations omitted); § 1915(a)(2) ("An appeal may not be taken [IFP] if the trial court certifies in writing that it is not taken in good faith.").

The standard for eligibility for section 3006A appointment of counsel is not indigence, but instead whether the party is "financially unable to obtain counsel." *United States v. Foster*, 867 F.2d 838, 839 (5th Cir. 1989). "Financial inability to obtain counsel is . . . a less stringent requirement than is indigency," even though courts often frequently use the term indigency when referring to a defendant's financial inability to hire an attorney.  *Id.* (footnotes and citations omitted).

In his February 2018 motion (Doc. 130), Mr. Moore requested to proceed IFP in the district court pursuant to 28 U.S.C. § 1915, but he did not submit an affidavit or other documentation required by section 1915.  He, instead, contended that he was entitled to proceed IFP based on the Financial Affidavit he completed in October 2015 in support of his request for appointment of an attorney under the CJA.  Doc. 9.  Mr. Moore indicated in his CJA Financial Affidavit that he was last employed in 2004; that he received approximately $12,000 in income in the twelve months before his arrest; that he had no cash or savings; that he had approximately $29,000 in credit card debt and a car loan; and that his monthly payments toward this debt was $835.

Based on this information, it was determined that Mr. Moore was entitled to appointed counsel under the CJA because he was "financially unable to obtain counsel." 18 U.S.C. § 3006A(b).  Mr. Moore was represented by CJA-appointed counsel until he requested to proceed

pro se and the court determined, after holding a *Faretta* hearing on February 26, 2018, that he had "knowingly, voluntarily, and intelligently waived his right to be represented by counsel in this case and ha[d] elected to represent himself" in this case. Doc. 133.

It was during this hearing that Mr. Moore inquired about the status of some of the pro se motions that he had filed earlier that same month, including his Motion to Proceed In Forma Pauperis (Doc. 130). The court was not in a position to address the merits of this or any other pending motions during the *Faretta* hearing that was scheduled to address Defendant's request to proceed pro se. The court, nevertheless, expressed the opinion that an IFP ruling *may* not be necessary given the prior determination that Defendant was entitled to appointed counsel under the CJA. That same day, the court entered an order denying as moot Defendant's Motion to Proceed In Forma Pauperis for the reasons stated in open court on February 26, 2018. Doc. 133.

In retrospect, given Defendant's decision to waive and forego his CJA-appointed counsel and represent himself, the court should have simply denied the motion outright for failure to comply with section 1915's requirements because the standards for section 1915 and section 3006A are different and the statutes serve different purposes. Regardless, the court's statements during the *Faretta* hearing regarding Mr. Moore's motion and decision to deny the motion as moot are not sufficient to show that he was allowed to proceed IFP for purposes of Rule 24(a)(3) after he chose to represent himself and waived his right to CJA-appointed counsel.

Even assuming, as Mr. Moore contends, that he was previously granted IFP status by the undersigned and, as a result, not required to obtain further authorization to proceed IFP on appeal, he is only entitled to a transcript or transcripts at the Government's expense if this court or the Fifth Circuit "certifies that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f); *see also* Fed. R. App. P. 24(a)(3)(A). "[A]bsent a statement of sufficient

specificity to enable the court to make a clear determination of the basis for the defendant's appeal, [the Fifth Circuit] give[s] great deference to the district court's determination of frivolousness." *United States v. Boutwell* 896 F.2d 884, 890 (5th Cir. 1990).  In this regard, the court in *Boutwell* cautioned future defendants who may seek to proceed IFP on appeal that:

> We will no longer search for, nor create, a ground upon which a defendant's appeal might be considered non-frivolous, and, having no other guidance as to what the defendant might have meant, grant his appeal for fear of denying some valid claim that may be buried somewhere in vague words. Such a basis must be made plain in the motions and any relevant facts must be set forth.

*Id.* In addition, a defendant who is proceeding pro se and IFP on appeal "must show why the transcript is necessary for proper disposition of his appeal and must alert this court to 'any facts that might require a close examination of the trial transcript.'" *United States v. Chi*, 757 F. App'x 407, 408 (5th Cir. 2019) (per curiam) (quoting *Harvey*, 754 F.2d at 571).

In both Notices of Appeal, Mr. Moore indicates that he is appealing: (1) the final judgment and his conviction; (2) the court's order of forfeiture (firearms and ammunition); and (3) the court's order (Doc. 554) and ruling that "it lacked jurisdiction to impose an injunction on the Government to correct [his] criminal record after the Government unlawfully altered his NCIC Criminal history to reflect a felony probation which had been dismissed by a judge for the State of Texas nearly 8 years ago."[7] Def.'s Notices of Appeal (Docs. 590, 596).

The first of these two grounds is far too general and vague to enable the court to make a clear determination regarding the basis for his appeal and thus do not present a substantial question for appeal.  Even assuming that the issues Defendant intends to raise on appeal are the same as those included in his Motion for Stay (Doc. 594), filed April 7, 2021, the result is no different.

---

[7] The National Crime Information Center or "NCIC" is a computerized index of criminal justice information that includes, for example, criminal record history information, fugitives, stolen properties, and missing persons.

In his Emergency Motion to Stay, Defendant contended that he was likely to succeed on the merits of his appeal given the "many plain constitutional violations and rulings contested by [him] as being erroneously applied as it pertains to the applicability of federal law." Def.'s Mot. to Stay 2.  More specifically, he argued that: (1) his arrest and the seizure of the four firearms from the pawn shop were unlawful; (2) the Fifth Superseding Indictment is defective because it did not include the additional element required by *Rehaif*; (3) jury tampering and two jurors' failure to follow the court's instructions is plain error; (4) witnesses committed perjury and evidence was falsified; and (5) the court's incorrect application of a two-level enhancement under U.S.S.G. § 3C1.1 increased his advisory guideline imprisonment range from 41-51 months to 51-63 months.

The court denied Defendant's Motion to Stay (Doc. 587) because it determined, among other things, that he was not likely to succeed on the merits of any of these issues.  For the reasons that follow, the court similarly determines that Mr. Moore is not entitled to receive transcripts at the Government's expense because: (1) he failed to establish that his appeal presents a nonfrivolous, substantial question; (2) he has not satisfied all other requirements for obtaining transcripts at the Government's expense; or (3) he did not request transcripts that might be relevant to the issues raised. *See* § 753(f); *Harvey*, 754 F.2d at 571.

### i.      Lawfulness of Arrest and Seizure of Firearms

Defendant contended in his Motion to Stay that his conviction should be overturned because his arrest and the seizure of firearms were unlawful.  He argued that his arrest was unlawful because the warrant for his arrest did not contain a description of him or other identifying information.  In addition, he argued that the warrant did not exist at the time of his arrest because there is no indication that the warrant was entered in the NCIC database or any other database before his arrest and, thus, the arresting IPD police officers could not have confirmed the existence

of the warrant.  He also asserted that, after he was arrested on October 29, 2015, pursuant to a federal warrant, the IPD "falsely reported to the NCIC that he was arrested for disturbing the [p]ublic [p]eace," which offense he contends never occurred, and then five years later on January 27, 2020, the IPD requested that his criminal history in the NCIC database be changed to reflect that he was arrested on October 29, 2015, for committing a federal offense. Regarding the seizure of the four pawned firearms, Defendant contended that they were unlawfully seized from the Lone Star Pawn shop without a warrant or probable cause to believe they were evidence of a crime.

These and similar arguments by Defendant were previously addressed at length by the court in ruling on his motion to suppress and motions to dismiss and determined to be factually and legally unsubstantiated and without merit.  *See* Doc. 260; Doc. 267; Doc. 268 at 1 (IPD's alleged falsification of arrest report to conceal the truth regarding his arrest) and 4 (alleged misconduct based on speculation and immaterial and minor inconsistencies). Accordingly, the court refers to its prior rulings and will not elaborate further except to note that Mr. Moore previously stated during a hearing on August 1, 2018, that he agreed with the court's ruling denying his motion to suppress with respect to the search or inspection and seizure of the four pawned firearms.  The court, therefore, determines that these issues are frivolous and do not present a substantial question for appeal.

Moreover, while issues regarding the validity and constitutionality of Defendant's arrest were addressed during the suppression hearing on July 12 and 13, 2018, and the pretrial conference held on August 1, 2018, Defendant did not request a transcript of either of these hearings, *see* Doc. 604, and he does not explain why a transcript of either hearing would be needed for proper disposition of his appeal regarding these issues, whether legal or factual.  *See Harvey*, 754 F.2d at 571.

ii.       *Compliance with Rehaif*

Defendant argued in his Motion to Stay that his conviction should be reversed because the Fifth Superseding Indictment did not comply with the Supreme Court's opinion in *Rehaif*. Defendant raised a similar argument in his motion for acquittal after the second trial, arguing that the Fifth Superseding Indictment and Jury Charge were defective because, while they alleged or stated that he knew he belonged to the categories of persons under sections 922(g)(1) and (8), they did not allege or state that he also knew he was prohibited from possessing a firearm as a result of his status.

The court determined that this legal argument by Defendant and his interpretation of *Rehaif* were incorrect as a matter of law.  In reaching this determination, the court agreed with the Sixth Circuit's opinion in *United States v. Bowens*, 938 F.3d 790, 797-98 (6th Cir. 2019), which had addressed and rejected outright a similar argument by a defendant that *Rehaif* requires the Government to prove that the defendant knew both his status and that he was prohibited from possessing a firearm. Based on the court's review of *Rehaif* and the reasoning in *Bowens*, it determined that Mr. Moore's "reading of *Rehaif* goes too far" because such an argument "runs headlong into the venerable maxim that "ignorance of the law is no excuse."  *Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code." Doc. 528 (quoting *Bowens*, 938 F.3d at 797).

When the court ruled on Defendant's motion for acquittal in July 2020, the Fifth Circuit had yet to address this issue.  Even if the Fifth Circuit disagrees with this interpretation of *Rehaif*, Defendant does not provide, and the court is not aware of, any reason why the transcripts he requested, including the transcript of his arraignment after the Fifth Superseding Indictment was

filed, would be needed to properly resolve this purely legal issue on appeal.  *See Harvey*, 754 F.2d at 571.

### iii.      *Alleged Jury Misconduct and Tampering*

Defendant contends that his conviction should be reversed because of jury tampering and the alleged failure of two jurors to follow the court's jury instructions.  This issue, which was raised for the first time by Defendant in his Motion to Stay was waived, is without merit, and presents no nonfrivolous substantial question for appeal.

Jurors are presumed to follow instructions provided by a district court. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation omitted). Moreover, Defendant did not present any evidence to support his allegation of jury misconduct and tampering.  For this reason, the court concluded in its memorandum opinion and order denying his Motion to Stay (Doc. 587) that this contention was based on nothing more than rank speculation because there was not a scintilla of evidence to even intimate that the two jurors who were aware of the text message in question, or any other juror, discussed the text message during the course of deliberations or otherwise, or were improperly influenced by the text message.

Further, when the court held a hearing with the parties, explained the issue and steps it had taken to investigate the matter, and asked the parties whether they were opposed to the two jurors continuing to serve on the jury, the Government and Mr. Moore both expressly stated that they had no opposition.  Doc. 587 at 6 (citing Tr. 8-9 (Doc. 511)). The court, therefore, explained that, given Defendant's lack of opposition, any objection on appeal was waived. *Id.* The court also explained that, even though Defendant did not object, it did not believe that allowing the two jurors to remain on the jury affected a substantial right of Mr. Moore or would cause him to suffer undue prejudice. *Id*. at Tr. 9.  It was not until Defendant filed his Motion to Stay that he argued for the

first time that the two jurors did not follow the court's instruction to not talk to anyone about the case during the trial, and it can be "reasonably presumed that [they] did not follow other instructions" while deliberating. Doc. 587 at 6-7 (quoting Def.'s Mot. to Stay 5).

The court disagrees.  If Defendant had any concerns as to whether the two jurors could follow the court's instruction or be fair, he could have and should have raised those concerns when the issue arose during the trial, not for the first time postjudgment.  Even if not waived, the court determines, for the reasons in this section and the additional discussion regarding this issue set forth in its memorandum opinion and order (Doc. 587), that any such appellate issue is baseless, frivolous, and presents no substantial question as required to obtain a transcript at Government expense.

### iv.    Alleged Witness Perjury and Evidence Falsification

Based on the arguments included in his motion for acquittal (Doc. 512), Defendant asserted in his Motion to Stay that he:

> continues to assert absolute innocence in this case and can plainly show on appeal that documents and evidence in this case were falsified, his NCIC Criminal History was unlawfully tampered with, and several witnesses committed perjury during the trial knowingly and deliberately giving sworn testimony that was different from material statements and evidence they had previously submitted under oath.

Def.'s Mot. to Stay 6 (Doc. 594).  In his motion for acquittal, Defendant argued that Agent Scott Satcher's and Loan Star Pawn owner Charles Reyna's testimony during the second trial was inconsistent in certain respects with the testimony they gave during the first trial and the evidence. In addition, he argued that Vincent Santoscoy's testimony contradicted Mr. Reyna's testimony. Mr. Santoscoy also worked at Loan Star Pawn and testified as a fact witness for the Government. Defendant further argued that certain physical evidence was inconsistent with witness testimony. These arguments pertain to the pawn transactions and whether the pawn receipts were original or

carbon copies—a distinction that Defendant incorrectly assumed, throughout the proceedings in this case, was legally significant.  Defendant, therefore, contended that no rational juror could have concluded that the Government met its burden of proving that he knowingly possessed a firearm on August 11, 2015, the date the four guns were pawned.

There is no evidence to support Defendant's contention that evidence was falsified or that any witness committed perjury simply because some testimony during the second trial was different from or inconsistent with prior testimony.  Some witnesses had difficulty recalling certain events or their prior testimony because of the passage of time between the two trials. A skilled defense lawyer could have impeached the witnesses' credibility based on inconsistencies in their testimony.  In choosing to represent himself, Mr. Moore knowingly and voluntarily accepted the risk that his lack of legal training could affect his defense.  Regardless, this is not proof of perjury.

Moreover, the court explained in ruling on Defendant's motion for acquittal that his argument regarding contradictory testimony or evidence was actually an issue of credibility that went to the weight to be given such testimony.  The court further explained that jurors are the sole judges of witness credibility and believability and the weight to be given to witness testimony. Defendant acknowledged as much in his motion for acquittal. Doc. 512 at 5 (quoting *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976), for the proposition that jurors are the sole arbiters for witness credibility).  Thus, the court determined that under the applicable legal standard— accepting all reasonable inferences that tended to support the Government's case and resolving all conflicts in the evidence in the Government's favor—this was not a valid ground for setting aside the jury's guilty verdict because: (1) the jury in this case was instructed accordingly regarding their role in judging the credibility of witnesses and evidence; and (2) there was sufficient evidence

from which the jury could have found beyond a reasonable doubt each of the essential elements of the two offenses charged.  *See* Doc. 528 at 3-4, 6-7.

Review on appeal is similarly deferential to the jury's verdict, which must be affirmed "unless no rational jury could have found the offenses' essential elements proven beyond a reasonable doubt." *United States v. McClaren*, 13 F.4th 386, 400 (5th Cir. 2021) (citation omitted). Because the matters raised by Defendant focus on the weight to be given evidence and witness testimony, which is not evaluated on appeal,[8] and his contentions regarding alleged perjury and falsified evidence are based on nothing more than unsupported conjecture, the court determines that these issues are frivolous and do not raise a substantial question for appeal.  Further, any appeal by Defendant of this issue is not relevant to his request for transcripts at the Government's expense because he did not request a transcript of either trial.  *See* Doc. 604.

> v.     *Allegedly Unlawful Alterations to NCIC Criminal History*

Defendant also contended in his Motion to Stay, without elaborating, that "his NCIC Criminal History was unlawfully tampered with" by the Government or IPD. Def.'s Mot. to Stay 6.  Contrary to Defendant's assertion, this issue is not addressed in his motion for acquittal, but it does appear to be similar or related to arguments included in his Request for the Court to Direct the Government to Correct the Unlawful Changes Done to [His] Criminal History (Doc. 531) that was filed on July 15, 2020.   It is also relevant to his appeal of the court's order (Doc. 554) and denial of this same motion for lack of jurisdiction.  *See* Def.'s Notices of Appeal (Docs. 590, 596) (contending that the court erred in ruling that "it lacked jurisdiction to impose an injunction on the Government to correct [his] criminal record after the Government unlawfully altered his NCIC

---

[8] *United States v. Harris*, 960 F.3d 689, 693 (5th Cir. 2020) (citations omitted).

Criminal history to reflect a felony probation which had been dismissed by a judge for the State of Texas nearly 8 years ago.").

According to these filings, Defendant apparently believes that the Government and law enforcement engaged in an unlawful conspiracy to alter his criminal history in the NCIC database in early 2020 in an effort to foil and undermine his prior arguments that: (1) his arrest pursuant to the federal warrant was unconstitutional because the NCIC database did not indicate, prior to his arrest, that Judge Stickney had issued the warrant for his arrest; and (2) before 2020, the NCIC database did not include information regarding his 2002 Texas robbery conviction in Case No. F-0239765 and, therefore, this conviction, which he refers to as "deferred probation," could not serve as a predicate offense for the felon-in-possession-of-a firearm charge under section 922(g)(1).

Defendant's first argument is difficult to follow. He Defendant asserts that the Government or the IPD unlawfully tampered with or altered his criminal history as reported in the NCIC database in early 2020. To support this assertion, he contends that, after he was arrested on October 29, 2015, pursuant to a federal warrant, the IPD "falsely reported to the NCIC that he was arrested for disturbing the [p]ublic [p]eace," which offense he contends never occurred, and then five years later, in early 2020, the IPD requested that his criminal history in the NCIC database be changed to reflect that he was arrested on October 29, 2015, for committing a federal offense. He further contends that the arrest that was added to his criminal history in 2020 is a "false arrest" because he was only charged by the IPD with disturbing the public peace on October 25, 2015, after IPD officers were unable to "confirm an ATF Warrant for [his] arrest in the NCIC database." Doc. 531 at 1-2. In addition, he accused the Government's attorneys in this case of being the driving force behind this change.

This contention harkens back to an earlier argument Defendant made regarding the validity of his arrest based on perceived immaterial inconsistencies between information in the NCIC database and the IPD's arrest report regarding warrant or case numbers; the reasons for his arrest (federal warrant for the firearm offense versus disturbing the peace); and the IPD's alleged inability to confirm the existence of the federal arrest warrant through the NCIC or the Texas Crime Information Center ("TCIC"). The court, however, addressed these and Defendants' other arguments in its July 31, 2018 and August 2, 2018 memorandum opinions (Docs. 260, 267) and concluded that they were without merit because: (1) the evidence during the suppression hearing clearly established that a facially valid federal warrant for his arrest existed at the time of his arrest notwithstanding his unsupported belief that an unlawful conspiracy of great magnitude involving local and federal law enforcement, the magistrate judge, and the Government's attorneys was afoot; (2) Mr. Moore was arrested pursuant to that warrant; and (3) it was irrelevant whether IPD officers were able to confirm the existence of the warrant after he was arrested via the NCIC, the TCIC, or other means. The court also attempted to explain to Defendant during the suppression hearing that the things he was focusing and relying on regarding federal case numbers, the timing of the entry on the docket sheet of the arrest warrant, and other notations and entries on the docket sheet, were procedural case management matters that were not relevant to whether he was arrested pursuant to a valid federal warrant.

Regarding the second argument, Defendant contends that his criminal history in the NCIC database was also unlawfully tampered with or altered in early 2020 to include a prior "deferred probation" that he had successfully completed. Defendant asserts that the purpose of his completing the deferred probation was to have it permanently removed from his criminal history.

This argument is related to a previous argument Mr. Moore raised before the first trial and continued to assert thereafter regarding a prior felony conviction. Specifically, he argued that his 2002 state robbery conviction and 2003 shock probation for that offense was not a final conviction under Texas law or for purposes of 28 U.S.C. § 922(g)(1). In its November 14 and 19, 2019 orders (Docs. 455, 467), the court explained why it disagreed with this contention and determined, based on *United States v. Daugherty*, 264 F.3d 513, 514 (5th Cir. 2010), and other legal authority, that successful completion of probation does not expunge a conviction for purposes of section 922(g). As a result, a person remains a convicted felon under Texas law even if he or she successfully completes and is discharged from probation. In addition, because this was a purely legal issue, the court explained that it would instruct the jury as to whether Mr. Moore's Texas robbery conviction in Case No. F-0239765, if proved by the Government, could serve as a predicate offense for a felon-in-possession-of-a-firearm charge under section 922(g)(1).

Defendant disputed whether the Government's evidence in the first trial was admissible or sufficient to prove he had a felony conviction. As he was tried a second time, this objection is now irrelevant. In 2020, Defendant contended , based on his prior legal argument, that there was insufficient evidence during the second trial evidence to establish he had a felony conviction to support Count One because his robbery conviction and shock probation for that offense was not a final conviction. Because the court had previously addressed and rejected this argument, it denied his motion for acquittal after the second trial by order dated July 15, 2020. *See* Doc. 528 (citing and incorporating Nov. 19, 2019 Order 7-9 (Doc. 467); and June 19, 2019 Mem. Op. & Order 11-12 (Doc. 342); and Tr. 138-46 (Vol. 2)).

Defendant has not expressly appealed either of these two legal issues. He, instead, focuses on his contention that, in early 2020, the Government, the IPD, or both unlawfully falsified,

tampered with, and altered his criminal history in the NCIC database.  There is no evidence, however, to support his contention that the Government or the IPD did anything unlawful or improper.  Even if he can establish that the Government, the IPD, or both, unlawfully falsified, tampered with, and altered his criminal history in the NCIC database, it would not affect his conviction, sentence, or the outcome in this case.  This is so because the presence or absence of information in the NCIC database regarding his October 29, 2015 arrest and 2002 robbery conviction are not relevant to and do not affect the court's prior rulings regarding the existence of a valid federal arrest warrant and legal determination that his 2002 robbery conviction can serve as a predicate felony offense under section 922(g)(1).

For these same reasons, it also makes no difference whether the court had jurisdiction or authority to order the Government or the IPD to make the changes he requested to his criminal history in the NCIC database.  Jurisdiction or not, Defendant was not entitled to the relief sought in his motion (Doc. 531).  Thus, regardless of the outcome of his appeal of the court's order denying this motion (Doc. 554), it will not affect the validity of his arrest or conviction for the offense charged in Count One.  Any issues regarding the changes to his criminal history in 2020 and the court's denial of his request to order the Government to "correct" these changes are, therefore, frivolous and do not present a substantial question for appeal.

Further, Defendant did not request a transcript of the suppression or pretrial conference hearings held in 2018 in which issues regarding the validity and constitutionality of his arrest were addressed, *see* Doc. 604, and he does not explain why a transcript of either hearing would be needed for proper disposition of his appeal regarding this or other issues, whether legal or factual. *See Harvey*, 754 F.2d at 571.  Additionally, any issues pertaining to the correctness of the court's ruling regarding its authority or jurisdiction to order the Government to "correct" his criminal

history in the NCIC database and its determination that Defendant's 2002 robbery conviction could serve as a predicate felony offense under section 922(g)(1) in light of his being granted shock probation are legal issues that do not require examination of any transcribed proceeding. *See Chi*, 757 F. App'x at 408 (quoting *Harvey*, 754 F.2d at 571).

### vi.     Propriety of Obstruction Enhancement Under § 3C1.1

Defendant argued in his Motion to Stay that the court erred in applying a two-level obstruction enhancement under U.S.S.G. § 3C1.1, and that this error increased his advisory guideline imprisonment range from 41-51 months to 51-63 months. Defendant, however, does not appeal for purposes of obtaining a lower sentence. He, instead, contends that his conviction should be set aside in its entirety to avoid: (1) having this conviction added to his criminal record; and (2) serving the 3-year term of supervision imposed by the court.

Moreover, the court granted his request for a downward variance in part because he obtained lawful employment after being released in 2019 before his second trial; he maintained that employment and even received a job promotion; and he complied with the terms of his pretrial supervision. As a result of the variance, he was sentenced to time-served or 45 months, which falls within the lower range. The court noted during sentencing that such a sentence was appropriate after consideration of the section 3553(a) factors. It also explained that it would have imposed the same sentence despite its rulings on the parties' sentencing objections and arguments. Thus, even if Defendant prevails on this issue on appeal, his conviction will not be set aside, and his sentence on remand would be no different. Accordingly, any appeal based on this issue is frivolous and presents no substantial question.

###### vii.    *Alleged Errors in Forfeiture Proceedings and Rulings*

Defendant's Notices of Appeal indicate that he is appealing the "court's order of forfeiture." Docs. 590, 596. By "order of forfeiture," Defendant appears to refer to the Preliminary Order of Forfeiture entered on March 22, 2021 (Doc. 579), and his request to receive a transcript of the forfeiture hearing held on March 22, 2021, is presumably related to this appellate issue. The court's reasons for granting the Government's Motion for Entry of Preliminary Order of Forfeiture (Doc. 523) and denying Defendant's motions and objections in opposition are detailed in its memorandum opinion and orders entered on February 12, 2021 (Doc. 570); and March 22, 2021 (Doc. 578). As explained in these memorandum opinion and orders, Defendant waived his right to a forfeiture hearing and unequivocally stated at the conclusion of the trial that he was not claiming any interest in the property to be forfeited. Even if not waived, the court also explained why the arguments and objections asserted by him were untimely, filed in violation of the court's orders, and/or without merit. Thus, to the extent he seeks to appeal any of these same issues, the court determines that they are frivolous and fail to present a substantial question. Additionally, because the untimely forfeiture arguments and objections asserted by Defendant are legal in nature, and he does not point to any "any facts that might require a close examination of the [forfeiture hearing] transcript," he is not entitled to receive a transcript of the forfeiture hearing at the Government's expense. *See Chi*, 757 F. App'x at 408 (quoting *Harvey*, 754 F.2d at 571).

###### viii.    *Irrelevance of Requested Competency and Discovery Hearing Transcripts*

In his Request for Transcripts to be Paid at Government's Expense (Doc. 604), Mr. Moore includes the following requests for transcripts of hearings that dealt with discovery issues and his competency to stand trial:

| HEARING DATE | PROCEEDING | JUDGE |
|---|---|---|
| 2/11/2016 | Competency Hearing | Hon. Judge Sam A. Lindsay |
| 4/26/2016 | Competency Hearing | Hon. Judge Sam A. Lindsay |
| 1/17/2017 | Conference / Hearing | Hon. Judge Sam A. Lindsay |
| 5/9/2018 | Discovery Hearing | Hon. Judge Sam A. Lindsay |

Mr. Moore, however, has failed to identify any issue that he intends to raise on appeal regarding the discovery or competency proceedings in this case that would enable the court to make a clear determination of the basis for any appeal of such issues; nor has he shown why the transcripts of these competency and discovery hearings are needed for proper disposition of his appeal. *See Boutwell* 896 F.2d 884, 890; *Harvey*, 754 F.2d at 571.   Further, the court determines that Defendant's appeal of any yet-to-be identified competency or discovery issue would be frivolous and not present a substantial question.

The discovery motions and issues addressed during the May 9, 2018 hearing are set forth in the court's May 20, 2018 order (Doc. 187).  In this order, the court denied as moot several of Defendant's discovery motions because they were withdrawn by him.  Defendant's remaining discovery motions were denied as moot because it appeared from what was discussed during the hearing that the Government had produced most of the materials and information included in these motions, and Defendant did not object to the court's rulings regarding these motions during or after the discovery hearing.

Regarding additional witness information requested verbally by Defendant during the discovery hearing, the court included in its order certain directives, a suggestion for Defendant about preparing subpoenas, and a schedule to facilitate the resolution of certain issues.  *See id*. The court's order regarding these additional discovery issues tracked what was discussed in the hearing.  Once again, Defendant raised no objections during or after the discovery hearing.

Accordingly, he waived any issues pertaining to the rulings regarding these discovery issues.  Even if not waived, he has not shown how the discovery issues addressed in this hearing and the court's order would affect the outcome of this case.  Thus, any appeal by him of the court's rulings regarding these discovery issues is frivolous and does not present a substantial question.

Any appeal by Defendant regarding the competency proceedings in this case is similarly frivolous and does not present a substantial question.  Defendant does not identify, and the court is unable to conceive of any issue regarding Defendant's competency that would affect the outcome of this case as it pertains to his conviction and sentencing.  It was originally determined in April 2016 that Mr. Moore was unable at that time to understand the nature and consequences of the proceedings against him or to assist properly in his defense against the charges brought against him and, thus, incompetent to stand trial at that time.  The court, however, later determined in January 2018, after conducting a second competency hearing and receiving additional evidence, that Mr. Moore was *presently* competent to stand trial.  Mr. Moore's request to represent himself was also granted so the case and two trials moved forward with him proceeding pro se.

The court understands that Mr. Moore is not pleased with the court's decision to require him to attend anger management counseling as a condition of his supervision.  The court, however, made unequivocally clear during sentencing in ruling on his objections to the probation officer's recommended conditions of supervised release that its decision to require him to attend anger management counseling had nothing to do with the earlier competency proceedings.  Instead, this condition was imposed because of his tendency during court proceedings to become frustrated and impatient, which in turn manifested into angry outbursts and "mean mugging" the court, counsel, and witnesses. Mr. Moore also acknowledged that his temper did "get the best of him at times," which was evident on more than a few occasions in courtroom.  *See* Doc. 597.

Memorandum Opinion and Order – Page 33

As the court explained in its memorandum opinion and order denying Defendant's Motion to Stay, this and the other conditions of supervision were imposed to provide an added measure of deterrence to criminal conduct and assurance to the court that Mr. Moore knows the consequences of his failure to comply with any term or condition of supervision, and to assist him in his re-integration into society. *Id.* In addition, the court sustained Mr. Moore's objection to the probation officer's recommendation that he participate in mental health treatment services, including services that may include medications prescribed by a licensed physician. Accordingly, any appeal by him pertaining to the competency proceedings in this case are frivolous and do not present a substantial question.

Accordingly, for all of these reasons, the court determines that Mr. Moore has not met his burden under section 753(f) of establishing his entitlement to receive the transcripts requested at the Government's expense. The court, therefore, **denies** his Request for Transcripts to be Paid at Government's Expense (Doc. 604).

## V.      Conclusion

For all of the reasons explained, the court **grants** Defendant's Motion to Withdraw And/Or Disregard Dkt. 607 (Doc. 611); **denies as moot** Emergency Motion for Order to Designate and Forward Partial Record for Pending Motion to Stay (Doc. 607); **denies** Defendant's Motion for Order to Forward and Designate the Record on Appeal (Doc. 592); **grants** Defendant's Motion for Leave to Reply (Doc. 608); and **denies** Defendant's Request for Transcripts to be Paid at Government's Expense (Doc. 604).

**It is so ordered** this 29th day of October, 2021.

Sam A. Lindsay
United States District Judge